The question in this case is whether a municipality has a remedy by injunction to prevent a violation of a so-called zoning ordinance, forbidding, under penalty, any business establishment in a described residence district.
The penalty imposed by the ordinance is a fine not exceeding $25 or imprisonment for a term not exceeding 30 days, or both the fine and imprisonment, in the discretion of the court. That is the maximum penalty that the city of New Orleans can impose for a violation of any ordinance. See Act 143 of 1898, p. 256. Prosecutions for violations of municipal ordinances, in New Orleans, are tried in the recorders' courts. They have no other jurisdiction. Const. art. 7, § 94.
The judge of the civil district court dismissed the suit, ex proprio motu, declaring that he had not jurisdiction ratione materiæ. The city has appealed.
The city avers that the continuing violation of the ordinance is a constant public nuisance, particularly to the residents of the district where the business is forbidden. The business is that of a retail dealer in ladies' wearing apparel. The establishment could hardly be regarded as a nuisance anywhere except in an exclusive residence neighborhood where business establishments are proscribed by statute or ordinance. In such a neighborhood, of course, any business establishment is a public nuisance, because, if for no other reason, it is an example of defiance of the municipal government. Whether the establishment would be a nuisance, if *Page 28 
not forbidden by statute or ordinance, is not for the courts to say. The municipal council has, by its zoning ordinances, outlawed business establishments, as a nuisance, in the residence districts described in the ordinances, and we have decided that the municipal council had the authority to enact such ordinances. State ex rel. Civello v. City of New Orleans, 154 La. 271, 97 So. 440. The basis for the ruling was that, although it was not essentially a nuisance to have a business establishment in a residence part of the city, nevertheless, the city council might, under proper circumstances, regard it as a nuisance, and might therefore prohibit any business establishment in any designated residence district. What we decided, stated broadly, was that the zoning of the city, separating the business districts from the residence districts, was not a mere whim or caprice, but a proper exercise of the police power.
The zoning ordinance in this case does not, in terms, declare that the proscribed business establishment shall be deemed a nuisance. But the declaration that the establishment is unlawful, and that the proprietor shall, on conviction, be punished by fine or imprisonment, etc., is the same as to say that the establishment shall be deemed a nuisance. Surely it would add nothing to the meaning or purport of such an ordinance, if in terms it declared that a business establishment in the residence district should be deemed a nuisance.
The judgment appealed from is founded upon the proposition that the equity power of the courts, or the authority of a court whose jurisdiction is confined to civil cases, does not extend to the enforcement of the criminal laws by injunction, or to the prevention of violations of the criminal laws. As a rule, that is true; but the rule has its exceptions. An injunction should not be issued to prevent the commission of a crime, if the only reason for preventing it is that it *Page 29 
is a crime. But, if the wrong complained of is injurious to property interests or civil rights, or if it is a public nuisance, either in the opinion of the court or in virtue of a statute or an ordinance making it a nuisance, the fact that it is also a violation of a criminal statute or ordinance does not take away the authority of a court of civil jurisdiction to prevent the injury or abate the nuisance.
The result of a collation and comparison of the decisions on the subject is given in 32 C.J. 275 et seq., viz:
 "In the earliest period of its history the court of chancery assumed to exercise the power of preventing crimes. But the exercise of this prerogative grew less frequent with advancing civilization as the ordinary remedies for the punishment of crime become more effective and acts of lawlessness and violence less common. It is now universally held that, except where there is express statutory authority therefor, equity has no criminal jurisdiction, and acts or omissions will not be enjoined merely on the ground that they constitute a violation of law and are punishable as crimes. Under ordinary circumstances, a complete and adequate remedy for the violation of the criminal statutes of a state and of municipal ordinances is afforded by the courts of law; and, if a criminal prosecution will constitute an effectual protection against the acts or omissions complained of, no grounds exist for relief by injunction. It is not the intention of the law that constitutional provisions shall be evaded by substituting a civil, for a criminal, procedure, or a single judge for a jury. * * * Nor is it a ground for equitable interference by injunction that the punishment for the crime is inadequate.
"Notwithstanding the general rule stated above, it is well settled that, where the intervention of equity by injunction is warranted by the necessity of protection to civil rights or property interests, and the inadequacy of a criminal prosecution to effect this purpose, the mere fact that a crime or statutory offense must be enjoined as incidental thereto will not operate to deprive the court of its jurisdiction. The power of equity to enjoin the doing of acts threatening irreparable injury to property rights is inherent, and has been exercised by the courts of chancery since their evolution as a distinct tribunal, and this power cannot be divested, because the performance of such acts may be a violation of the criminal law. The criminality of the act, it it said, neither gives nor ousts jurisdiction in chancery. Especially *Page 30 
are the foregoing principles applicable where a statute on which the suit is based contains a provision for its enforcement by injunction. In granting the injunction, the court acts solely for the purpose of protecting property rights from damage, and in no way interferes with the enforcement of the criminal laws. The remedy given is purely preventive; defendant is not punished for what he has done; this is left to the criminal courts. * * *
 "Where an injunction is necessary for the protection of public rights, property, or welfare, the criminality of the act complained of does not bar the remedy by injunction."
The result of a collation of the decided cases is also furnished in 14 R.C.L. 376, viz:
 "In early times the English court of chancery, not without much protest on the part of the common-law courts, occasionally issued injunctions to restrain the commission of certain criminal acts. This jurisdiction seems to have been confined to cases in which other tribunals were too weak to protect the poorer and more helpless classes of the community against the power of the great nobles, and the reasons for exercising it disappeared when the common-law courts became fully capable of controlling and repressing such acts of violence and outrage. Accordingly, it is now the rule that, where acts complained of are violations of the criminal law, courts of equity will not, on that ground alone, interfere by injunction to prevent their commission, as they will not exercise their powers for the purpose of enforcing the criminal laws by restraining criminal acts. * * *
"The rule stated in the foregoing paragraph does not preclude injunctive relief against the commission of criminal acts in any case where the act sought to be enjoined will operate to cause an irreparable injury to property or rights of a pecuniary nature. The rule in this respect, so far as one may be gathered from the decisions, which are in considerable conflict, is that equity will not interfere to prevent the commission of criminal acts, if the injury which will result to property therefrom is merely a consequence, however natural and inevitable, of such acts; but, if the acts, although criminal, in the sense that the state imposes a penalty for their commission, are primarily and essentially an injury to property, preventive relief may be granted within the same limits and under the same conditions as where the element of criminality is entirely absent; that is, an injunction will not issue unless the damage threatened is irreparable and the evidence clear and convincing. The court, in such case, does not *Page 31 
interfere to prevent the commission of crime, although that may incidentally result, but it exerts its force to prevent individual property from destruction, and ignores entirely the criminal feature of the act. The fact that a criminal act, which is a continuing injury to property or business, may also be indictable, as a crime does not deprive equity of its right to enjoin its commission. Thus, where a private nuisance, as for instance, a saloon, injuriously affects the rights of a complainant, in a manner different from that experienced by the public in general, the power of a court of equity to grant relief by injunction is not affected by the fact that the nuisance complained of is also a breach of the criminal law. The same principle applies, and the court will issue an injunction in a proper case, to restrain persons from attempting, by threats, violence, or intimidation, or other unlawful means, to prevent any person from engaging in, remaining in, or performing the business, labor, or duties of any lawful enterprise or occupation, although the acts sought to be restrained, if committed, constitute a crime. Again, a suit to enjoin the exercise of a privilege, under a license fraudulently obtained, until such license may be canceled, is within the jurisdiction of a court of equity, although the statute makes the exercise of such privilege without a license a misdemeanor. In such a case the object of the action is to cancel the license so obtained and the restraint, in the meantime, of the exercise of privileges thereunder which the license permits and is no crime; not to restrain the doing of such acts without a license which the statute prohibits. In granting this relief the constitutional right of trial by jury is not infringed on the theory that disobedience of the injunction will constitute contempt which may be punished summarily. Therefore, an injunction against strikers, to prevent them from destroying the plaintiff's business and intimidating his employees, will not be refused on the ground that the acts complained of are of a criminal nature, and that to punish them as contempts amounts to an assumption of criminal jurisdiction without the intervention of a jury. In order, however, to obtain relief by injunction against the commission of acts of a criminal character, on the ground of injury to the property rights of an individual, the court will require that the complainant clearly show such facts and circumstances in the particular case as will justify the court in granting the relief desired. It is also proper to observe, in this connection, that, in some cases, authority is given to municipal corporations to invoke the power of a court of equity to restrain violations of certain ordinances, on the theory of the inadequacy as a *Page 32 
remedy of successive actions following a series of violations. In such a case a constitutional provision that the right to a jury trial shall remain inviolate, in all cases in which it has been heretofore used, does not apply. * * *
 "Similarly, a railroad company may be enjoined from violating an act which forbids intoxication and the drinking of intoxicating liquors on railroad trains. Also, in case of public nuisances, an exception to the general rule seems to be well recognized; it being held that, though such a nuisance is indictable, yet a court of equity may, at the instance of the properly constituted public authority, issue an injunction as giving a more effectual and complete relief than can be afforded in a court of law. In the case of a nuisance of this character, it is also held that the fact that no property rights are involved is not material, in so far as the power of the court is concerned, though it seems that there must be some actual annoyance or injury or invasion of property right, either to the public or to individuals, to justify relief by injunction, instead of under the criminal laws. In the case of public nuisances, however, a distinction is made in some cases between those which arise from immoral, illegal or pernicious acts of men which, for the time being, create a nuisance which is indictable under the criminal laws, and those touching civil property rights or privileges of the public or the public health or any other similar matter over which equity jurisdiction exists; the power of the courts to issue an injunction in the former case being denied, while in the latter it is admitted. Thus on this ground an injunction has been refused to restrain gambling, or conducting public amusements in violation of the Sunday laws. It has also been held that a state is not obliged to remain inactive and content itself with the recovery of penalties imposed for the continued prosecution by a foreign corporation of a business, in violation of the public policy of the state, but may obtain relief by way of injunction against the acts complained of."
A case very much in point is In re Debs, 158 U.S. 564, 15 S. Ct. 900, 39 L. Ed. 1092, where the Attorney General proceeded by injunction against the officers of a striking railway union to stop their obstructing interstate commerce and the transportation of the mails. The defendants, as relators in a petition for writs of habeas corpus, etc., contended that the government's only remedy was by indictment and prosecution. Mr. Justice Brewer, for the court, answered: *Page 33 
 "Doubtless, it is within the competency of Congress to prescribe by legislation that any interference with these matters [meaning interstate commerce and the transportation of the mails] shall be offenses against the United States, and prosecuted and punished by indictment in the proper courts. But is that the only remedy? Have the vast interests of the nation in interstate commerce, and in the transportation of the mails, no other protection than lies in the possible punishment of those who interfere with it? To ask the question is to answer it. * * *
"Grant that any public nuisance may be forcibly abated either at the instance of the authorities, or by any individual suffering private damage therefrom, the existence of this right of forcible abatement is not inconsistent with nor does it destroy the right of appeal in an orderly way to the courts for a judicial determination, and an exercise of their powers by writ of injunction and otherwise to accomplish the same result. * * *
"So, in the case before us, the right to use force does not exclude the right of appeal to the courts for a judicial determination and for the exercise of all their powers of prevention. Indeed, it is more to the praise than to the blame of the government, that, instead of determining for itself questions of right and wrong on the part of these petitioners and their associates and enforcing that determination by the club of the policeman and the bayonet of the soldier, it submitted all those questions to the peaceful determination of judicial tribunals, and invoked their consideration and judgment as to the measure of its rights and powers and the correlative obligations of those against whom it made complaint. And it is equally to the credit of the latter that the judgment of those tribunals was by the great body of them respected, and the troubles which threatened so much disaster terminated.
"Neither can it be doubted that the government has such an interest in the subject-matter as enables it to appear as party plaintiff in this suit. It is said that equity only interferes for the protection of property, and that the government has no property interest. A sufficient reply is that the United States have a property in the mails, the protection of which was one of the purposes of this bill. * * *
 "We do not care to place our decision upon this ground alone. Every government, entrusted, by the very terms of its being, with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal *Page 34 
to one of those courts that it has no pecuniary interest in the matter. The obligation which it is under to promote the interest of all, and to prevent the wrongdoing of one resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court."
It is, of course, not possible to reconcile all of the decisions on this subject. Some of them are directly contrary to each other. We have in mind two cases exactly alike, in which the same and identical issue was decided in opposite ways, viz.: Heber v. Portland Gold Mine Co., 64 Colo. 352, 172 P. 12, L.R.A. 1918D, 681, and Goldfield Consolidated Mines Co. v. Richardson (C.C.) 194 F. 198. In the former case, the Supreme Court of Colorado ruled that an injunction should not issue to prevent the carrying on of the business of buying, knowingly, stolen ores from the mining company's employes; and in the latter case the federal court ruled that an injunction should issue to prevent the crime. Each court gave sound reasons for its ruling. The Colorado court said:
 "Every theft is an invasion of some one's property rights. The fact that in this instance an injunction is sought only against a certain class is not material. There are other lines of business in which thefts are extremely common and difficult to detect. If one class may be enjoined either directly or indirectly from stealing, other classes may be treated in the same manner. Modern penal laws are intended both to punish the criminal, and to deter others from perpetrating like offenses. The purpose of the law, then, is to accomplish the very same end which the injunction would accomplish according to the reasoning of defendants in error. Where a criminal prosecution will effectually redress the plaintiff's wrong, he has no remedy in equity."
In the other case, the federal court said:
 "The mere presence of such places where stolen ore can be disposed of is an incentive to larceny, and pro tanto a menace to complainants' rights. Purchasing the stolen ore is as clearly and distinctly a wrong as the original theft. Notwithstanding it is purchased by a so-called assay office, ore is still the property of the owner from whom it was stolen, and he may recover it, or its value, in an action at law. But if this course were pursued and an action at *Page 35 
law had for each wrong, the result would be a multitude of suits, involving expenses probably in excess of the value of the recoveries, as well as many unsurmountable difficulties in procuring testimony. Clearly the legal remedies are inadequate, and in no just sense can they afford the relief to which complainants are entitled."
High on Injunctions, § 20, is in accord with the doctrine which we have quoted from Corpus Juris, and from Ruling Case Law, viz.:
 "It must constantly be borne in mind, however, that the rule forbidding interference by equity to restrain the commission of crimes is limited strictly to cases where the acts sought to be enjoined are unaccompanied by any injury to property rights and where the granting of the relief would therefore be, in effect, the enforcement by courts of equity of the penal laws of the state. And where the acts against which the relief is prayed are such as to cause irreparable damage to property or property rights, or the case is one which for any other reason calls for the interposition of equity according to established principles, the mere fact that such acts are also criminal in their nature and punishable under the penal laws of the state constitutes no valid defense to the interference of the court by injunction. In such case property rights are being violated and it is for their protection that it is the duty of the court to interfere, and the wrongdoer will not be permitted to shield himself from the strong arm of equity by pleading the criminal nature of the wrongs in which he is engaged."
In the excellent brief filed by the amici curiæ several decisions are cited in support of the proposition that a chancery court has not jurisdiction to prevent a violation of a municipal penal ordinance, unless the act complained of is a nuisance per se, viz.: Village of St. Johns v. McFarlan, 33 Mich. 72, 20 Am. Rep. 671; Attorney General v. Utica Ins. Co., 2 Johns. Ch. (N.Y.) 371; Waupun v. Moore, 34 Wis. 450, 17 Am. Rep. 446. The decisions cited seem to be not in accord with the majority of the rulings on the subject.
Our conclusion is that the civil district court has jurisdiction of this case.
The judgment appealed from is annulled, *Page 36 
and it is ordered that this case be remanded to the civil district court for further proceedings consistent with the foregoing opinion. The costs of this appeal are to be borne by the defendant, Liberty Shop; the liability for other court costs is to depend upon the final judgment.