The record discloses no good reason why the four lots should not be divided in kind.

Judgment affirmed.

ROGERS, J., takes no part.

(132 So. 786)

STATE ex rel. HOCHFELDER v. CITY OF NEW ORLEANS et al.

No. 30979.

Feb. 2, 1931.

Rehearing Denied March 2, 1931.

Michel Provosty, City Atty., and George D. Leahy, Asst. City Atty., both of New Orleans, for defendants appellants.

Leslie Moses, of New Orleans, for interveners appellants.

McCloskey & Benedict, of New Orleans, for appellee.

Milling, Godchaux, Saal & Milling, of New Orleans, for amicus curiæ.

ODOM, J.

This is a mandamus proceeding brought by the plaintiff, who is a propery owner, against the city of New Orleans, the city engineer, and the zoning board of appeal, to compel the issuance to him of a permit to use the ground floor of his building in its entirety for business purposes, and to demolish a partition wall therein, coupled with a prayer for injunction prohibiting the city and its officers from interfering with him in such use of the premises and the dismantling of said partition wall.

The court ordered defendant to show cause on a day fixed why writs of mandamus and injunction should not issue. Answering the rule, the defendants, who were joined by certain property owners and taxpayers, admitted that relator had been refused the permit which he requested and for cause why the writs should not issue averred that the issuance of such permit would be in violation of the zoning ordinance of the city.

After a trial of the rule on its merits, there was judgment for relator commanding the city and its officials to issue the permit and perpetually enjoining them from interfering with relator in removing said partition and using the premises as he saw fit, all as prayed for. The city, its officers, and the interveners appealed.

■ Relator owns a building in the city of New Orleans, known as No. 7600 St. Charles avenue, in the square bounded by Hillery and Adams streets, this being a section of the city set apart and reserved for residential purposes under the city zoning ordinance, and designated as "B Residence District."

The front portion of the ground floor of the building had for many years prior to the passage of the zoning ordinance been used for commercial purposes, while the rear portion thereof had been used as a dining room and a kitchen by the occupants of rooms on the second floor; the front and rear sections being separated by a partition wall.

The use of the front section of the floor for commercial purposes was not in conformity with the zoning ordinance and is what is designated in said ordinance as a "non-conforming use." However, section 10 of the ordinance, which is 11,302 Commission Council Series, adopted June 1, 1929, provides that the lawful use of a building existing at the time the ordinance was adopted might continue in that district for a period of twenty years, although such use was not in conformity with the ordinance, the continued use being permitted under paragraph (d) of said section. .

The front portion of the premises involved had been used as a drug store, but relator had a prospective tenant who wanted to use it as a grocery store, which was a nonconforming but permissible use under the ordinance. But the prospective tenant wanted more floor space than had been formerly used for commercial purposes and to meet his needs it was necessary to demolish and remove the partition wall which separated that portion of the room then used for commercial purposes from that portion not so used. Under the building regulations of the city, the owner could not demolish the wall without a permit.

Relator made it perfectly clear that his purpose in removing the partition wall was to enable his prospective tenant to use more floor space, more cubical contents in the building than had theretofore been used for commercial purposes. The city officials construed the zoning ordinance to mean that the use of the building for commercial purposes could not be enlarged and for that reason refused to issue the permit.

It is perfectly clear that under the zoning ordinance the use of the ground floor of relator's building from the front back to the partition wall for commercial purposes could have been continued for a period of twenty years from the date of the adoption of said ordinance, such use being lawful at that time. And while that is true, it is also clear that the space theretofore used for commercial purposes could not be expanded for the same kind of business, nor could any floor space or cubical contents be added for another nonconforming use.

Paragraph 1(b), section 10, of the ordinance reads as follows:

"Existing Use of a Building: The lawful use of a building existing at the time of the passage of this ordinance may be continued except as hereinafter provided in paragraphs (c) and (d), although such use does not conform to the provisions hereof, provided, that the use shall not be expanded nor shall any structural alterations except those required by law or ordinance be made therein. If no structural alterations are made and if the square foot area and/or the cubical contents are not increased then a non-conforming use of a building may be changed to other non-conforming uses of the same of (or) more restricted classification, but in no case exceeding two such uses."

The use of this building as a drug store was a "non-conforming" use. Relator desired to use it for a grocery store, which was also a "non-conforming use." He had the right to make the change in so far as the kind of business was concerned. But in making the change he could not make a structural alteration, and could not increase the floor space or cubical contents of that portion of the building which was used for commercial purposes on the date that the ordinance was adopted. Such is prohibited under the precise language of the ordinance. The last sentence of clause (b) provides that, "if no structural alterations are made and if the square foot area and/or the cubical contents are not increased then a non-conforming use of a building may be changed to other non-conforming uses of the same of (or) more restricted classifications, but in no case exceeding two such uses."

Relator sought a permit not only to remove the partition wall, but to use the ground floor in its entirety for business purposes. It may be that under the building regulations of the city he would have had the right to remove the partition wall for some purposes. But manifestly he had no right to remove it in order to enlarge the space for business uses.

Counsel for relator contend that if a building was being used for business or commercial purposes when the zoning ordinance was adopted, its status or character as business property was fixed as of that date, and its status being thus fixed, the premises could be extended or enlarged for the same or similar use, if to do so involved no "structural alterations" in the building. Hence they argue that the only issue involved in the case is "what is the meaning of the words 'structural alterations,' as used in the zoning law."

As we construe the ordinance, there were two things the relator could not do: First, he could not make any structural alterations in the building, and, second, he could not expand or enlarge the floor space for business purposes.

■ It is true that the use made of the building at the time the ordinance was adopted fixed its status as business property. But that is not all. The amount of floor space or cubical contents in the building which could be used for business purposes was also fixed as of that date.

Counsel devote the major portion of their brief to a discussion of the question whether a removal of the partition wall would constitute a "structural alteration" of the building. Under the view which we take it is not necessary to pass upon that question.

We think the city and its officers were wholly within their rights in refusing the permit requested by relator.

■ Relator alleges that to deny him the right to use his establishment in its entirety for business purposes will greatly decrease

his revenues and render the property less valuable, and that to the extent that the zoning ordinance deprives him of that right it is unconstitutional.

This point seems to have been abandoned, as it was not mentioned by counsel in oral argument or in brief. However, under the following recent decisions of this court the ordinance is constitutional: State ex rel. Dema Realty Co. v. McDonald et al., 168 La. 172, 121 So. 613; State ex rel. National Oil Works of La. v. McShane, Mayor, et al., 159 La. 723, 106 So. 252; City of New Orleans v. Liberty Shop, 157 La. 26, 101 So. 798, 40 A. L. R. 1136.

For the reasons assigned, it is ordered and decreed that the judgment appealed from be reversed, and that the writs issued herein be dissolved and set aside, and that relator's demands be rejected and his suit dismissed at his cost in both courts.

ROGERS, J., dissents, being of the opinion that the judgment appealed from should be affirmed.