O’NIELL, Chief Justice.
 

 This is a suit to abate an alleged nuisance. The case comes here on a writ of certiorari and alternative wri-ts of prohibition and mandamus, issued at the instance of the defendants, William J. Gruber and William A. Langhoff. They are complaining of a judgment granting a preliminary injunction against the conducting of a restaurant business in a way and place in which the plaintiff, Julius Szodomka, contends it is a nuisance. Gruber is the proprietor of the busines and Langhoff is the owner and lessor of the premises. The establishment complained of is the Meal-A-Mint Restaurant, on the south side of Sotíth Carrollton Avenue, in the square bounded on the west by South Claiborne Avenue and on the east by Nelson Street. Szodomka has his residence at the northeast corner of the square, fronting on South Carrollton Avenue and abutting the west side of' Nelson Street. He owns the property where hé resides, consisting of a handsome two^story residence on a lot measuring 75 feet front by 149 feet in depth. Langhoff owns all of the land extending- westward from Szodomka’s. lot to South Claiborne Avenue, and having a front of 226 feet along the south side of South Carrollton Avenue and a depth of 155 feet. Langhoff owns also an adjacent lot in the rear, having a front of' 75 feet on the east side of South Claiborne Avenue and the depth of 121 feet. The land at the northwest corner of the square, having a front of 70 feet on South Carrollton and a depth of 155 feet along the east side of South Claiborne Avenue, is leased to an oil company arid occupied by a drive-in filling station. The lot which is occupied by the Meal-A-Minit Restaurant, under the lease from Langhoff, adjoins the filling station property on its east side, and has a front of 56 feet on South Carrollton Avenue and a depth of 155 feet between parallel lines. The remaining portion of Langhoff’s property on South Carrollton Avénue is a vacant lot between the Meal-AMinit Restaurant lot and Szodomka’s lot, and measures 100 feet front by the depth of 155 feet between parallel lines. The front of the restaurant building is 20% feet from the south side of South Carrollton Avenue, and the east side of the building is approximately 2% feet from Langhoff’s vacant lot. The restaurant therefore is more than 100 feet — perhaps 115 feet— from 'Szodomka’s residence. He complains that he is often disturbed at night, and particularly in the late hours of the night and early hours of the morning, by the patrons of the restaurant, driving their automobiles across the sidewalk from South Carrollton Avenue, and from South Claiborne Avenue, and parking them in a space which is furnished by Gruber as a parking.place for his patrons, on the east side and in the rear of
 
 *1073
 
 the restaurant. The parking space extends nearly 27 feet over the west line of Langhoff’s vacant lot and is marked off by a row of 4 posts to warn or prevent the drivers of automobiles from going further upon the vacant lot. The parking space is paved with shells,. and the sidewalk in front of the restaurant is similarly paved; and a driveway across the sidewalk into the parking space is maintained by Gruber for the convenience and accommodation of the patrons of the restaurant. There is another driveway from the east side of South Claiborne Avenue across the sidewalk in front of the 75-foot lot, in the rear of the restaurant. This driveway extends in a northeasterly direction across the northwest corner of this vacant lot and across the southeast corner of the filling station lot to the parking space in the rear of the Meal-A-Minit Restaurant. The automobiles are parked so that they face diagonally towards Szodomka’s residence. He complains that the lights shine in his windows and that the slamming of the doors of the automobiles and loud talking of the occupants of the cars are a disturbance and nuisance to him. The testimony on that subject, however, aside from that of Mr. Szodomka himself, is altogether favorable to the defendants. Gruber, as proprietor and manager of the restaurant, caters to a very respectable class of patrons, and in fact the patrons are generally of that class of people. The evidence on the subject consists of the testimony of nine prominent business men, including bankers and professional men, all being Regular patrons of the establishment. Their testimony, which is uncontradicted except by Mr. Szodomka himself, shows that the business is conducted in a very orderly way and is not in any sense a disturbance or nuisance to the neighborhood. The restaurant remains open all night; but the lot on which it is located, like the lot on which the filling station is located, is classified as a commercial district by the so-called Comprehensive Zoning Ordinance. The restaurant therefore is not a nuisance, either in fact or in law.
 

 Szodomka’s suit is based mainly if not altogether upon his contention that the defendants are violating two municipal ordinances. He contends, first, that the defendants in maintaining the driveway across the sidewalk on South Carrollton Avenue, in front of the restaurant, and the driveway across the sidewalk on South Claiborne Avenue, to the rear of the restaurant, are violative of Ordinance No. 12,955, which forbids the opening or maintaining of such a driveway across a sidewalk within 150 feet from the nearest property line of the intersection of any two avenues, such as South Carrollton Avenue, and South Claiborne Avenue, having double roadways and neutral grounds, and being protected by a traffic signal or traffic officer. The ordinance merely forbids the opening or maintaining of such driveways for customers to drive into and out of “any establishment serving liquid or solid refreshments and catering to customers who drive in vehicles for such purpose into and from the premises, across the sidewalks adjacent to such avenues”. The driveways in this instance are within the forbidden distance of 150 feet from the nearest property line at the
 
 *1075
 
 intersection of the two' avenues, But the defendants insist that they are not violating the ordinance because the Meal-A-Minit Restaurant does not serve food or refreshments to any one in an automobile. The defendants argue that the ordinance is applicable only to establishments where food or beverages are served to patrons remaining in their automobiles. > And they argue further that the question whether they are violating the ordinance by maintaining the driveways across the sidewalks is a matter of no concern to the plaintiff in this case, because the ordinance is not a zoning ordinance, or an ordinance intended for the benefit of the residents only in the neighborhood, but is merely a traffic ordinance, intended for the safety and protection of the public generally. That contention is well founded. The ordinance in its title and in its text is declared to be enacted in order to relieve traffic congestion and to reduce the number of traffic accidents and to promote the public welfare. In its very nature the ordinance is only a traffic law and not a zoning law. The attorneys for Szodomka cite and rely upon the case of City of New Orleans v. Liberty Shop, 157 La. 26, 101 So. 798, 40 A.L.R. 1136, and State ex rel. Dema Realty Co. v. McDonald, 168 La. 172, 121 So. 613, where it was held that, as zoning ordinances are enacted for the benefit of the property owners and residents in the zoned area, any business establishment conducted within such an area, in violation of a zoning ordinance, is essentially a nuisance, which any resident in the zoned area may abate by injunction, without having to prove that the business is a nuisance in fact, and even though the ordinance is a penal ordinance. But the doctrine of those decisions is not applicable to a traffic ordinance, enacted only for the protection of the public generally and not for the special benefit of the property owners or residents in a defined area.
 

 The other ordinance which Szodomka contends is being violated by the defendants is what is called the Comprehensive Zoning Ordinance, No. 11,302. He contends that this ordinance is violated by the maintenance and use of the parking space on the east side of the restaurant, so far as the parking space extends over the west line of Langhoff’s 100-foot vacant lot, and that the ordinance is violated also by the maintenance of the driveway in the rear of the filling station and restaurant, extending from South Claiborne Avenue to the parking space in the back yard of the restaurant. It is conceded that the business conducted in the restaurant itself is not violative of the zoning ordinance, because the 56-foot lot on which the restaurant is located, like the 70-foot lot occupied by the filling station on the west side of the restaurant, is classified as “F” Commercial District, where business establishments generally are permitted. The 100-foot vacant lot between the restaurant lot and Szodomka’s residence is classed as “C” Apartment District, in'which business establishments such as restaurants are forbidden. Langhoff’s 75-foot lot in the rear of the filling-station property and of the restaurant property, and fronting on South Qaiborne Avenue, is classed as
 
 “A”
 
 Residential District in the Zoning Ordinance, No. 11,302; in which districts also business establishments such as restaurants are prohibited.
 
 *1077
 
 There is no business being conducted, on this 75-foot lot, unless the use of the driveway extending across the northwest corner of the lot and into the back yard of the restaurant property should be considered as a part of the restaurant business. Our opinion is that such a use of the driveway across the corner of the 75-foot lot is not a using of the lot for a part of the restaurant business, within the meaning of the ordinance. .Likewise, the parking of the automobiles on the east side of the restaurant, and on the west side of the 100-foot vacant lot fronting on South Carrollton Avenue, is not a violation of the zoning ordinance unless such use should be considered as a part of the restaurant business. Our opinion is that such a use of that part of the 100-foot vacant lot is not a using of the lot for the purpose of conducting the restaurant business, within the meaning of the zoning ordinance. The fact that the municipal authorities, the city attorney and other officials who are entrusted with the enforcement of the municipal ordinances, are no't complaining or contending that the parking of the automobiles of the patrons of the restaurant on the western portion of the 100-foot lot on South Carrollton Avenue, or the driving of the automobiles across the northwest corner of the 75-foot lot on South Claiborne Avenue, is a violation of the zoning ordinance, confirms our opinion that there is no violation of the zoning ordinance in this instance. If the municipal authorities should construe the ordinance as forbidding such use of the western portion of the 100-foot lot on South Carrollton Avenue, or such use of the ■northwest corner of the 75-foot lot on South Claiborne Avenue, the municipality .would either stop this use of the property or lift the ban against it. Of course, if such uses of the property were plainly violative of the zoning ordinance Szodomka would have a right of action to prevent it, under the doctrine of the Liberty Shop case and the Dema Realty Co. case and the other cases there cited. But the municipality’s interpretation of its own penal ordinance, tacitly given to it by the municipal officers who are entrusted with its enforcement, is entitled to great weight in a case where there is much doubt, as there is in this case, whether the ordinance forbids the act complained of. The argument that the municipal officers who are entrusted with the enforcement of the zoning ordinances of the city have construed the ordinance in question as being not violated by the defendants in this case is supported by the fact that Szodomka, before instituting this suit, undertook and failed to have the defendants prosecuted in the recorder’s court for violation of the ordinance in question. He testified in this case that he was called as a witness on an affidavit filed against Gruber in the recorder’s court, and went back to the court three times as a witness, but that the case was continued each time, and was never taken up for trial. From this we infer that the municipal authorities do not consider that the parking of the automobiles of the patrons of the Méal-A-Minit Restaurant on the western portion of the 100-foot lot on South Carrollton Avenue, or the driving of the automobiles across the northwest corner of the 75-foot lot on South Claiborne Avenue to the back yard of the restaurant property, is
 
 *1079
 
 a violation of the Zoning Ordinance No. 11,-302.
 

 The attorneys for Szodomka cite the definition of a garage, in the first section of the Zoning Ordinance No. 11,302, where it is declared that a garage is not only a building or portion thereof but is also any lot of ground or portion thereof used for the housing, temporary storing, parking or caring for self-propelled vehicles or trailers. It is contended therefore that the parking space on the east side of the restaurant, extending nearly 27 feet over the west portion of the 100-foot lot on South Carrollton Avenue, is within the definition of a garage or parking lot, according to the ordinance. Our opinion is thát this definition of a garage, as including parking lots used for the temporary storage or parking or caring for automobiles, has reference particularly, if not exclusively, to parking lots on which the business of parking automobiles temporarily is conducted for a stipulated rental. In that sense the parking space on the east side of the Meal-A-Minit Restaurant is not within the definition of a garage or parking lot.
 

 The attorneys for Szodomka refer also to subsection 5 of section 5 of Ordinance No. 11,302, where lots which are classified as in “C” Apartment Districts may be used not only for the purposes expressly permitted in the preceding subsections but also for “uses customarily incident to any of the permitted uses when located on the same lot and not involving the conduct of a business”. The question is whether permitting the patrons of the restaurant to park their cars on the western portion of the 100-foot lot on South Carrollton Avenue, and the permitting of the patrons to drive their cars across the northwest corner of the 75-foot lot on South Claiborne Avenue, is a use of these lots “involving the. conduct of a business”, in the meaning of the ordinance. What we have said with reference to the interpretation which the municipal authorities have given to the ordinance as applied to this case is applicable also to this question, whether the-parking of the automobiles of the patrons, of the restaurant on the western portion of the 100-foot lot on South Carrollton Avenue, and the driving of the cars across, the northwest corner of the 75-foot lot on South Claiborne Avenue, is a use “involving-the conduct of a business”. Obviously, the-municipal authorities are construing the-■phrase “involving the conduct of a business” as meaning involving the conduct of' the business of conducting a storage or parking lot, as an independent business,, apart from the restaurant business. That is a logical construction of the phrase “not involving the conduct of a' business”, as. used in the ordinance.
 

 The injunction which was granted in this, case had a very wide scope. First, it forbade the defendants to operate or to permit the operation of the Meal-A-Minit Restaurant by serving customers who drive their vehicles across the sidewalk on Carrollton Avenue or across the sidewalk on Claiborne-Avenue to the restaurant property. Second, it forbade the defendants to permit any customer of the Meal-A-Minit Restaurant to park or drive his or her automobile on any portion of the 56-foot lot on which the
 
 *1081
 
 restaurant is situated. Third, the injunction forbade the defendants to permit any driveway to exist across the sidewalk on South Carrollton Avenue, over which driveway patrons might drive their cars to and from the restaurant lot for the purpose of patronizing the restaurant. Fourth, the injunction forbade the defendants to operate or permit the operation of any parking lot- — or to permit any customer of the restaurant to park his or her automobile— on any part of the 100-foot lot fronting on South Carrollton Avenue, or on any part of the 75-foot lot fronting on South Claiborne Avenue.
 

 The attorneys for Szodomka contend that the only remedy or relief that can be given to the defendants in this proceeding is to grant them a suspensive appeal 'from .the judgment which granted the preliminary injunction. ' It is argued that the court cannot set aside the preliminary injunction in this proceeding; and in support of the argument the case of Blanchard v. Haber, 163 La. 627, 112 So. 509, is cited. The reason why the court could only grant the complainant a suspensive appeal in that case, and could not go so far then as to set aside the preliminary injunction, was that the complainant did not ask for any further or other remedy or relief except to be allowed a suspensive appeal from the order granting the preliminary injunction. That fact is stated in the published report of the case, and we have verified the statement by referring to the original record in the archives of this court. In this case Gruber and Langhoff do not pray merely for a suspensive appeal from the judgment granting the preliminary injunction, but have availed themselves of the provision in section 6 of' the injunction law, Act 29 of 1924, that nothing contained in the act shall be construed to limit the issuing by this court of any writ, process or order in aid of the court’s supervisory jurisdiction. Accordingly, Gruber and Langhoff, in their petition to this court prayed that the judge who granted the injunction should be directed by mandamus to set aside the writ of injunction, and that the writs of certiorari, prohibition and mandamus, which were prayed for in the petition to this court, should be made peremptory, and accordingly that the petition for an injunction should be dismissed. Hence the prayer in the relators’ petition to this court, unlike the prayer in the petition in the case of Blanchard v. Haber, is sufficient to allow the court to avoid taking more than one bite at the cherry.
 

 On the trial of this case -it was shown that Gruber had transferred his lease of the restaurant property to a corporation named Good Foods, Inc., by a deed which was not on record when the suit" was filed. Gruber is a minority stockholder and president of the corporation and is the manager of the restaurant. His attorneys contend that the corporation should have been cited as a defendant in the suit when it was disclosed that the corporation owned the lease. Our conclusion that for the reasons which we have given the plaintiff is not entitled to. a preliminary injunction makes it unnecessary to decide whether Good Foods, Inc., should have been cited as a defendant in the case.
 

 
 *1083
 
 The judgment complained of hy the relators, William J. Gruber and William A. Langhoff, is annulled; the preliminary injunction which was allowed by the judgment is dissolved at the cost of the respondent, Julius Szodomka; and the parties are referred now to the Civil District Court for such further proceedings in the case as may be deemed necessary, and be consistent with the opinion which we have rendered.
 

 ROGERS, J., absent.