59 So.2d 832 (1952)
STATE ex rel. PRATS
v.
CITY PLANNING & ZONING COMMISSION OF CITY OF NEW ORLEANS et al.
No. 19979.
Court of Appeal of Louisiana, Orleans.
June 19, 1952.
*833 George O'Dowd, New Orleans, for plaintiff and appellee.
Henry B. Curtis, City Atty. and Sidney C. Schoenberger, Asst. City Atty., New Orleans, for defendants and appellants.
Before McBRIDE and REGAN, JJ., and LEWIS R. GRAHAM, Judge ad hoc.
LEWIS R. GRAHAM, Judge ad hoc.
This is an appeal from a judgment of the Civil District Court for the Parish of Orleans, ordering the City Planning and Zoning Commission of the City of New Orleans (hereinafter called Zoning Commission) and the City of New Orleans and the various officers and members of said bodies to approve the plan of subdivision submitted by relator, Prats, to the Zoning Commission and to issue a certificate of approval.
Relator owns Lot No. 2 of Square No. 9 of Aurora Gardens Subdivision in the Fifth District of New Orleans, said lot having a frontage of 233.98 feet on Newton Highway, 283.50 feet in width in the rear, 53.28 feet in depth and front on Aurora Drive and 170.35 feet in depth on the other side line.
The act of sale to relator contained the following restrictions, viz.:
"No residential structure shall be erected or placed on any building plot, which plot has an area of less than ten thousand two hundred fifty (10,250) square feet, * * *
"* * * No building shall be located nearer than ten (10) feet from any side lot line * * *"
Relator desired to subdivide this portion of ground, and as required by the Subdivision Regulations adopted by the Zoning Commission under authority of Act 300 of 1946, LSA-R.S. 33:101 et seq., relator submitted to the Zoning Commission a plan to subdivide said portion of ground into two lots, designated as 2-A and 2-B.
Due to the title requirement of 10,250 square feet for a building site, and the requirement of 10 feet space between a structure and the side line, relator had trouble in fixing Lot 2-B. After various conferences and drafts of plans, he finally submitted to the Zoning Commission the plan which is the subject of this suit:

*834 This plan proposed to take an irregular portion or dog tail (designated D. T. on the plan), measuring 66.14 feet long by 19.37 feet in width, from the southeast corner of Lot 2-A and add it to the southwest corner of Lot 2-B. This addition would give Lot 2-B an area of approximately 10,400 square feet, enough to satisfy the title requirement.
This substitute plan was submitted to the Zoning Commission, and on June 27, 1951 was disapproved by the Commission. Relator appealed from this ruling to the Commission Council of New Orleans. On December 21, 1951, the Commission Council dismissed the appeal and upheld the action of the Zoning Commission in disapproving relator's proposed plan.
Relator then applied to the Civil District Court for the Parish of Orleans, for a writ of mandamus to compel approval of his proposed plan of subdivision by the Zoning Commission and the City of New Orleans.
Respondents, the Commission and the City and the officials thereof, filed a joint answer denying all the substantial allegations of the petition, except ownership and the disapproval of the proposed plan, and particularly alleged in Art. 3 of said answer:
"* * * that the subdivision plans submitted to the Commission by petitioner were obviously made in order to meet certain title restrictions, and provided for a lot of irregular shape, jutting out from the main portion of the lot and entirely different in shape and form from the ordinary lot. * * *"
The judge of the district court made the writ of mandamus peremptory and ordered the Zoning Commission and the City of New Orleans to approve relator's proposed plan of subdivision, and to issue a certificate of approval. Respondents appeal suspensively.
There are no issues of fact involved, the evidence consisting of uncontested documentary evidence and stipulated agreements as to the facts.
Only one issue of law is involved, viz., whether the action of the Zoning Commission and its approval by the Commission Council of New Orleans were so unauthorized and arbitrary as to amount to an abuse of the power and discretion conferred by Act 300 of 1946 and the Subdivision Regulations adopted by the Commission pursuant to said Act.
The judge of the district court stated in his reasons for judgment:
"* * * subdivisions of lots in the manner proposed by Relator would create a `chaotic condition' in the City of New Orleans."
Then he went on to say that he had tried to find some regulation that would prevent such chaotic condition but could not find such.
This is where the lower court erred, because the proposed plat of subdivision plainly shows that the proposed subdivision does not comply with the requirement of Subsection (f)(1) of Section 4 of the Subdivision Regulations, that all side lines of lots should be at right angles to straight street lines.
In deciding on the actions of zoning authorities, we must be guided by the rule stated in State ex rel. Dema Realty Co. v. McDonald, 168 La. 172, 121 So. 613, 616, that:
"* * * zoning ordinances will not be declared unreasonable and arbitrary, unless they are found to be plainly and palpably so."
And that the discretion of the municipal authorities in regard to zoning,
"* * * will not be interfered with by the courts, unless its exercise is found to be manifestly and palpably hostile and unreasonable."
In applying that rule, we are not unmindful of the Supreme Court's pronouncement in Carrere v. Orleans Club, 214 La. 303, 37 So.2d 715, that exemptions in favor of an owner must be liberally construed.
Act 300 of 1946, LSA-R.S. 33:107, states in part, in relation to municipal zoning commissions:
"A plan shall be made with the general purpose of guiding and accomplishing a coordinated, adjusted, and *835 harmonious development of the * * municipality, * * * which will, in accordance with present and future needs, best promote * * * convenience, prosperity, and general welfare, as well as efficiency and economy in the process of development; including, among other things, * * * the promotion of good civic design and arrangement, * * *."
Section 4(f)(1) of the Regulations adopted by the Zoning Commission in accordance with Act 300, provides that, "All side lines of lots should be at right angles to straight street lines, * * *" This certainly means, and can mean nothing else, that any side line of a lot must continue straight back to the rear line, i. e., always at a right angle to the straight street line.
The proposed plan shows that the west side line of Lot 2-B does not run all the way back to the rear line at right angles to the street line. It does run back 89.9 feet at a right angle; but then it turns off at an angle of approximately 110 degrees and runs west 66.14 feet, and then turns off and runs in a southerly direction 19.37 feet to the rear line of Lot 2-A, making the dog tail or irregular jutting out referred to in the testimony and in argument.
Obviously, this was a noncompliance with the requirement of Sec. 4(f)(1) and afforded ample basis for the action of the Zoning Commission in rejecting the proposed plan and for the Council to uphold the Zoning Commission.
The irregular portion, or dog tail, formed by this deviation from the right-angle straight line juts into half of the back portion of Lot 2-A, and does not provide "good civic design and arrangement," as set forth by Act 300 of 1946.
We believe that the noncompliance with Sec. 4(f)(1) afforded a sufficient legal basis to reject the plan; and additionally, the irregular and absurd dog tail justified the rejection of the plan because it violated good design and arrangement.
Mr. Bisso, the director of the Zoning Commission, stated:
"* * * In this particular case I would not say your application violated all the regulations nor has he complied with them. He is asking us to create a condition unnecessarily and which will, if carried out and repeated all over the city create such a chaotic condition, * * *

* * * * * *
"* * * The * * * granting of this request * * * is nothing but a request * * * to temper, * * * to set a precedent and I think it is a very dangerous precedent, to temper the regulations in order to get some other contract that is not within the realm or jurisdiction of the City Planning and Zoning Commission. * *"
Under the jurisprudence in regard to zoning, the burden of proof is on the landowner to show that the zoning body acted arbitrarily or without authority. Relator here has not met that test.
We, therefore, conclude that there was ample legal basis for the Zoning Commission to reject the proposed plan of subdivision, and for the Commission Council to affirm and uphold the Commission's disapproval of the plan, and that such actions were not arbitrary or capricious.
Appellee cannot derive any help from Sec. 8 of the Subdivision Regulations adopted by the City Planning and Zoning Commission, which provides:
"Whenever the tract to be subdivided is of such unusual size or shape or is surrounded by such development or unusual conditions that the strict application of the requirements contained in these regulations would result in real difficulties and substantial hardships or injustices, the Commission may vary or modify such requirements, so that the subdivider is allowed to develop his property in a reasonable manner, but so that, at the same time, the public welfare and interests of the city are protected and the general intent and spirit of these regulations are preserved."
First, because those provisions are permissive, not mandatory, on the Zoning *836 Commission. Second, because as so clearly explained by Mr. Bisso, Sec. 8 applies only to irregularities by necessity.
Surely, the irregularity here is not due to necessity but to relator's own acts. His title required that any building site to be created out of his ground should contain a maximum of 10,250 square feet; yet he deliberately erected a house in such a location that he cannot get 10,250 square feet in Lot 2-B, because of the title requirement of 10 feet clearance from the side line. Sec. 8 was not intended to relieve such a case.
It is pertinent to restate what the Supreme Court lately said in Ransome v. Police Jury of Parish of Jefferson, 216 La. 994, 45 So.2d 601, 603:
"* * * everyone holds his property subject at all times to every valid exercise of the police power, * *."
See also State ex rel. Hochfelder v. City of New Orleans, 171 La. 1053, 132 So. 786; State ex rel. Manhein v. Harrison, 164 La. 564, 114 So. 159.
When relator acquired this property on April 27, 1948, Act 300 of 1946 was in effect, and also the Zoning Commission Master Street Plan, adopted December 17, 1947.
The record does not show when relator erected the house on Lot 2-A, but this record shows, and this court knows, that from April 1948 there was such activity and agitation for zoning for subdivisions that relator should have taken care of the location of his house if he had any idea of ever subdividing.
Finally, in regard to the argument that there was some sort of estoppel against the Commission because in some three or four instances the Commission had approved or waived certain irregularities, such estoppel is not applicable here. First, because we doubt that discretionary action by a body such as the Zoning Commission creates the obligation to exercise discretion in another case. Second, because Mr. Bisso testified and showed that in each of the cases referred to by relator, they were irregularities because of necessity which justified the application of Sec. 8, whereas he testified that the irregularity here was not an irregularity because of necessity such as alone would justify applying Sec. 8.
For the reasons herein set forth, the judgment appealed from is reversed, and accordingly the writs of mandamus issued by the judge of the district court are recalled and annulled, and relator's suit is dismissed at his cost.
Reversed
JANVIER, J., takes no part.