61 So.2d 270 (1952)
CITY OF NEW ORLEANS
v.
LAFON.
No. 19898.
Court of Appeal of Louisiana, Orleans.
November 3, 1952.
Rehearing Denied December 1, 1952.
Writ of Certiorari Denied January 12, 1953.
*271 Henry B. Curtis, City Atty., Sidney C. Schoenberger, Asst. City Atty., New Orleans, for plaintiff and appellee.
Gatlin & Hill, New Orleans, for defendant and appellant.
JANVIER, Judge.
This is a suit brought by the City of New Orleans, appearing through the Mayor and the City Attorney, authorized by motion of the Commission Council, to enjoin the defendant, Camille Lafon, from operating on certain property which she owns: "A trailer court wherein space is rented for the parking and servicing of house trailers; generally 7 or 8 in number, with provisions being made for the parking and servicing of ten such house trailers."
It is alleged that in so operating the property which, under the Comprehensive Zone Law of the City of New Orleans (Ordinance 11,302 C.C.S. as amended), is in an area classified as "C" Apartment, the defendant is in violation of the zone regulations for the reason that the conducting of a commercial business in such a zone is not permitted.
In a supplemental petition it is alleged that, should it be held that the property is not being used for commercial purposes but for residential units, since each trailer on the said lot is used by a family, nevertheless the property is being used in violation of the said Comprehensive Zone Law, for the reason that there are eight separate units on the two lots, which lots are not of sufficient area to comply with the provisions of the said zone law which requires that in such case "every building hereafter erected shall be located upon a lot as herein defined."
On behalf of defendant there were filed various pleas and exceptions: (1) That the Civil District Court and this court are without jurisdiction, for the reason that the alleged violation of the ordinance is a crime or misdemeanor for the prosecution of which the appropriate criminal court alone has jurisdiction; (2) That "this cause is res adjudicata", for the reason that exceptor was charged with the same violation before the proper court of criminal jurisdiction, was convicted therein, appealed from said conviction, and was discharged by the proper appellate court, which held that the identical matters and things alleged in this suit did not constitute a violation of the Comprehensive Zone Law of the City of New Orleans; (3) That should an injunction issue in this matter, the defendant would be placed in double jeopardy, for the reason that should she violate the terms of the injunction, she would make herself liable to punishment for contempt and thus might, for the second time, be placed in jeopardy for the same offense with which she was charged in the criminal proceeding; (4) That the petition discloses no right or cause of action; and (5) That the petition is so vague and indefinite that defendant cannot safely answer thereto.
When the matter came up for hearing on the rule for a preliminary injunction, the following stipulation was entered into:
"It is agreed and stipulated between opposing counsel that this case shall be considered by the Court on the merits, and whatever judgment is rendered shall be considered as a final judgment of this court."
After a trial on the merits, there was judgment in favor of the City of New Orleans enjoining the defendant, Camille Lafon, from using as a trailer court for the parking and servicing of house trailers the following described property:
"A certain piece or portion of ground, together with all improvements thereon and appurtenances thereunto belonging or in any wise appertaining situated in the First District of the City *272 of New Orleans, in Square 779 thereof, said square being bounded by Baudin, D'Hemecourt and S. Solomon Streets and S. Carrollton Avenue; said portion of ground is composed of Lots 8 and 9 in said square 779; Lot 8 measures 32'1"6'" front on S. Carrollton Avenue, 32'0"0"' in width in the rear, 126`3"1"' depth on the side line of Lot 7, and 128'11" 2'" depth on the side line toward Lot 9. Lot 9 adjoins Lot 8 and measures 32'1"6"' on S. Carrollton Avenue, 32'4"0"' in width in the rear, and 128'11"2"' on the side line next to Lot 8, and 131`7"4"' on the side line next to Lot 10, being the same property acquired by Camille Lafon on May 23, 1941, registered C.O.B. 518, folio 34."
From that judgment the matter is now before us on appeal.
There is no important disagreement over the facts, there being a stipulation in the record from which we gather the following.
Camille Lafon is the owner of the property which is being used as a trailer court and which has been so used for approximately six years, prior to which time the property was vacant. The property consists of two lots measuring approximately 32 feet each, fronting on South Carrollton Avenue, by a depth of 129 feet, with a square footage of approximately 8,256 feet for the two lots. At the present time there are eight trailers on the property, each occupied by a separate family as a living unit. The trailers are not self-propelled but may be readily moved by an automobile, tractor or some other motor power. The "trailers are not permanent fixtures or permanent houses," meaning "the trailers come and go; one leaving and another comes in, or two or more come in."
It is further stipulated that, under the terms of the ordinance, the property on which the trailer parking lot is operated is within an area classified as "C" Apartment; that the ordinance contains a penal provision under which the violation thereof is made a misdemeanor punishable by fine or imprisonment or both; that the defendant was heretofore charged in the Recorder's Court and was convicted, but that she appealed to the Criminal District Court where "the conviction was reversed and the charge was dismissed." It is further stipulated that the "defendant is making use of said property in the same manner as she was at the time this criminal prosecution was instigated." The charge in the Recorder's Court was "that the defendant had more than one building upon any one lot." It is further stipulated that, since the dismissal of the charge in the criminal court, defendant "did install sanitary facilities in the nature of plumbing utilities, and that the City of New Orleans, Sewerage and Water Board, issued its certificate of final inspection approving it for the specific purpose of servicing the trailers."
Before proceeding to the merits of the controversy, we shall discuss the various preliminary questions raised by defendant's pleadings. First, it is said that the civil courts are without jurisdiction, for the reason that the zoning laws provide for criminal prosecution and for fine and imprisonment or both.
In City of New Orleans v. Liberty Shop, 157 La. 26, 101 So. 798, 799, 40 A.L.R. 1136, this identical question was considered, and, in spite of a vigorous protest by one of the Justices, the Court said:
"The judgment appealed from is founded upon the proposition that the equity power of the courts, or the authority of a court whose jurisdiction is confined to civil cases, does not extend to the enforcement of the criminal laws by injunction, or to the prevention of violations of the criminal laws. As a rule, that is true; but the rule has its exceptions. An injunction should not be issued to prevent the commission of a crime, if the only reason for preventing it is that it is a crime. But, if the wrong complained of is injurious to property interests or civil rights, or if it is a public nuisance, either in the opinion of the court or in virtue of a statute or an ordinance making it a nuisance, the fact that it is also a violation of a criminal statute or ordinance does not take away the authority of a court of civil jurisdiction to prevent the injury or abate the nuisance."
*273 It is argued that a distinction may be made, based on the fact that in that case the suit was for the purpose of abating a nuisance, whereas here the purpose of the suit is to enjoin the defendant from violating the zoning law. That was the identical purpose which appeared in the Liberty Shop case. In this case, as in that, the purpose of the suit was to enjoin the violation of the zoning law, and, as a matter of fact, the violation of such a zoning law is a nuisance "per se" as the Supreme Court so stated in that case, saying that the declaration that an establishment is unlawful, since it is in violation of a zoning law, "is the same as to say that the establishment shall be deemed a nuisance." The Court said:
"* * * Surely it would add nothing to the meaning or purport of such an ordinance, if in terms it declared that a business establishment in the residence district should be deemed a nuisance."
Next it is said that this case is res adjudicata, for the reason that the charge which was made in the criminal courts and which there was found to be unfounded is the same as the charge which now appears in the civil courts. The answer is twofold. In the first place, as a result of the zoning law two courses of procedure are open to the City, and they are not mutually antagonistic. A prosecution may lie for the violation of the zoning law and an injunction may issue to prevent further violations. The fact that a criminal prosecution fails does not mean that an injunction in the civil courts may not be applied for, even where the criminal charge is based on the same alleged violation as is the petition for injunction.
Counsel for defendant, in discussing the question of whether an injunction will lie to prevent the doing of an act if the same act is by statute made a criminal offense, would distinguish the holding in the Liberty Shop case on the ground that there the City, before attempting to obtain the injunction, did not first attempt criminal prosecution. Counsel say that it may well be that, as a result of the zone law, there are afforded to the City, where there is an alleged violation, either of two remedies, but not both. They say that if the City decides to attempt criminal prosecution and fails, then the other remedyinjunctionis not available and that here, since the City first tried unsuccessfully to prosecute the defendant criminally, no longer is there available the remedy of injunction. We do not see that this fact alters the situation for the reason which we have already given, that the two remedies are not mutually antagonistic. The truth of the matter is that the remedy of injunction in such case is available only because the violation affects property rights which can be protected only by injunction and which protection is, in no sense, preserved by criminal prosecution.
There are two divergent views on the question of whether the violation of a criminal statute gives rise to the right to enjoin, but under both views it is felt that, where there is involved a property right which would not be adequately protected by criminal prosecution, the right to injunction vests regardless of whether there may also be a criminal prosecution. For a full discussion of the question see note in 40 A.L.R. 1136.
Furthermore, as a matter of fact, the charge which was made in the criminal court was an entirely different charge from that which appears in this proceeding. There the charge was that "the defendant had more than one building upon any one lot," and the charge was dismissed, according to the stipulation, on the holding that the trailers are not buildings. The charge here is not that there are more buildings than the property can accommodate, but that the defendant is conducting a commercial establishment in a zoned area in which such establishments are not permitted.
We next consider what seems to be a plea of double jeopardy. It is said that the defendant, having heretofore been charged and acquitted in a criminal court, cannot be made a defendant in an injunction suit, for the reason that if an injunction should issue and should the defendant thereafter violate the terms of the injunction, *274 she could then be charged with contempt and be punished for the same offense with which she was previously charged and from which charge she was acquitted.
We see no merit whatever in this contention. The criminal charge under the zoning law is based on an entirely different offense from that which might result from the violation of an injunction should one issue. See 22 C.J.S., Criminal Law, § 293.
The exception of no cause of action is based on the fact that the suit is brought through the Mayor and the City Attorney. Counsel for exceptors maintain that the zoning ordinance requires that the zoning regulations shall be enforced by the City Engineer.
This contention is based on the fact that in the zone law there appears in section 32 the provision that:
"* * * it shall be the duty of the City Engineer to see that this ordinance is enforced."
And in section 34 it is provided that:
"* * * Such regulations shall be enforced by the City Engineer who is hereby empowered to order in writing the remedying of any condition found to exist therein or thereat in violation of any provision of the regulations of this ordinance. * * *"
In the first place, in that same section 34, it is provided:
"That in case any building or structure is erected, structurally altered, or maintained, or any building, structure or land is used in violation of this ordinance, the proper city official, in addition to other remedies, may institute any appropriate action or proceedings to prevent such unlawful erection, structural alteration, maintenance, use to restrain, correct, or abate such violation, to prevent the occupancy of said building, structure, or land, or to prevent any illegal act, conduct, business, or use in or about such premises. * * *"
Obviously this last quoted provision did not contemplate that the City Engineer should bring any such suit, for it provides "that the proper city official" shall do so. Furthermore, we think it obvious that the provisions referring to the City Engineer mean no more than that the City Engineer shall be the proper person to discover such violations and to attempt to have them remedied, but that where the necessary remedy or change is not forthcoming, the necessary legal proceedings should be brought by "the proper city official." In the City charter (Act 159 of 1912, as amended) it is provided that the City may sue and be sued, and necessarily such suit shall be brought not in the name of any particular officer, but in the name of the City which appears through its Mayor. And in this case, as we have said, the authorization for the bringing of the suit was by special motion adopted by the Commission Council.
The exception of vagueness is so completely without merit that we shall not discuss it.
When we come to consider the merits of the controversy, we find ourselves convinced that the identical issue, which is present here, was considered and passed upon by us in City of New Orleans v. Louviere, La.App., 52 So.2d 751. There the City sought to enjoin Charles Louviere from operating a trailer court on certain property owned by him and located in an area which, under the zone ordinance, was classified as "A" Residential. The only possible distinction between that case and this is that here the property, on which the trailer court is located, is in an area classified as "C" Apartment, but no comfort can be derived by defendant from that fact because it is made clear by a reading of the ordinance, as amended, that a commercial business, such as a trailer court, is not permitted in an area zoned as "C" Apartment any more than it is permitted in an area zoned as "A" Residential.
In section 5 of the ordinance, which controls the uses for which buildings or premises in "C" and "D" Apartment Districts may be used, it is provided that no such buildings or premises shall be used for any purpose except those set forth, and we do not find set forth, among those purposes *275 for which buildings or premises may be used, commercial establishments or trailer parking courts, or in fact, any other public garages or businesses of that kind.
It is true that the words "trailer court" are not expressly mentioned in that particular section of the ordinance, but it was not necessary that such a business or other commercial venture be expressly mentioned since the section does prohibit any use not expressly permitted.
Counsel for defendant vehemently attacks the use of the word "permitted", saying that, under the Constitution of the United States, a state or municipality does not "permit" the use by an owner of his property; that the owner of property has the right to use it for any purpose without any permit, unless he be expressly prohibited from doing so, and that therefore no permit is necessary. This may be true, but we find here that all other uses, except those especially set forth, are prohibited, and that therefore the use to which defendant devotes her property is prohibited, being one of those not expressly mentioned as not within the prohibition. Furthermore, we notice in another section of the ordinance, as amended by Ordinance 11,920 C.C.S., that even in areas classified as "E", "F" and "G" commercial the operation of trailer courts is expressly prohibited.
Counsel for defendant direct attention to the decision of our Supreme Court in State ex rel. Szodomka v. Gruber, 201 La. 1068, 10 So.2d 899, 902, and suggest that there it was held that the providing of a place for the temporary parking of automobiles was not a commercial venture. But the reasons given by the Supreme Court in that case show clearly that under the facts found in this case a directly opposite result would have been reached.
There the defendant operated a restaurant and, in connection with it, provided an area on which the customers might park their cars, without the payment of a parking charge, and then go into the restaurant for service. It was contended by the relator, Szodomka, that this constituted the operation of a garage and thus was a commercial venture in itself. The Supreme Court said:
"* * * Our opinion is that this definition of a garage, as including parking lots used for the temporary storage or parking or caring for automobiles, has reference particularly, if not exclusively, to parking lots on which the business of parking automobiles temporarily is conducted for a stipulated rental. In that sense the parking space on the east side of the Meal-A-Minit Restaurant is not within the definition of a garage or parking lot."
Here it is stipulated that the defendant receives regular compensation from the owners of the trailers for the use of the space in which they were parked. Obviously then this constituted the operation of a garage or trailer court "for a stipulated rental," and thus there was not present the very fact on which the Supreme Court decided the Szodomka case.
Counsel suggest that, for several years prior to the time at which this proceeding was instituted, the City of New Orleans issued to the defendant a regular annual permit to operate the trailer court. If this fact would have any effect, we find nothing in the record to show that any such permits were issued.
It is said that the Sewerage and Water Board of the City of New Orleans approved certain installations of plumbing which afforded toilet and other sanitary facilities to the users of the trailers. But surely this fact cannot be held to estop the City from now contending that the operation of such a court, no matter how sanitary or how well operated, is in violation of the zone law.
For these reasons and those given by us in City of New Orleans v. Louviere, supra, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.