*944
 
 HAMITER, Justice.'
 

 Leonhardt Brothers, a copartnership composed of Robert C. Leonhardt and Alex F. Leonhardt, is appealing from a judgment of the district court annulling and vacating a resolution of the Zoning Board of Appeal and Adjustment of the City of New Orleans, adopted November 2, 1949, which authorized the partnership to use for certain commercial purposes its property known as 3205 Belfort Avenue and situated in a district of New Orleans zoned as “A” Residential.
 

 Section 29 of Article 14 of the Constitution of 1921 grants authority to municipalities “to zone their territory; to' create residential, commercial and industrial districts, and to prohibit the establishment of places of business in residential districts.” In keeping with and incidental to this grant is Act No. 240 of 1926 as amended, LSA-R.S. 33:4721 through 33:4729, which announces various zoning regulations that may be imposed by the municipalities and prescribes the procedure to be followed.
 

 Pursuant to these constitutional and statutory provisions the City of New Orleans adopted on June 6, 1929 its Comprehensive Zoning Law, being Ordinance No. 11,302, C.C.S., which divided the City into districts for trade, industry, residence, and other purposes. As amended it pertinently provides, inter alia, as follows:
 

 “Sec. 10. [As amended by Ordinance 15,999 C.C.S.] Non-Conforming Use. (a) Existing Use of Land or Portion thereof: Be It Further Ordained, etc., That the lawful use of land, or portion thereof, existing at the time of the passage of this ordinance, although such lawful existing use does not conform to the provisions hereof, may be continued except as-hereinafter provided in paragraphs (c) and (d), * * *.
 

 “(b) Existing Use of a Building or Portion thereof. The lawful use of a building, or portion thereof, existing at the time of the passage of this, ordinance may be continued except as. hereinafter provided in paragraphs (c) and (d), although such lawful existing use of said building or portion thereof does not conform to the pro-visions hereof, * * *.
 

 “(c) Vacant Buildings or Vacant Parts of Buildings: No building or-part thereof, used in whole or in part for non-conforming commercial or in-, dustrial purposes and located in a Residential or Apartment District, * *- according to the provisions of this ordinance, which hereafter becomes and remains vacant for a continuous period of six (6) calendar months shall again be iised except in conformity with the regulations of the district in which such building is situated; * *
 

 “(d) Removal of Non-Conforming-Commercial or Industrial Uses: All non-conforming commercial or industrial uses of lands or buildings or por-
 
 *946
 
 tions thereof located in Residence or Apartment Districts according to the provisions of Ordinance No. 11,302 C.C.S., as amended, shall within a period of twenty (20) years from June 1, 1929, vacate in ‘A,’ ‘A-l,’ ‘A-2,’ and ‘B’ Residence Districts, * * ■
 

 Previous to and at the time of the adoption of the mentioned Comprehensive Zoning Law one James J. Monvoisin owned in the City of New Orleans adjoining properties known as 3201 and 3205 Belfort Avenue, the former being his residence and the latter a garage in which he stored numerous motor trucks, hand trucks, and other equipment, used in conducting his parcel delivery business. Although by the zoning regulations the properties were classified as
 
 “A"
 
 Residential, Monvoisin for a number of years continued the nonconforming commercial use of the garage (enlarged in 1930 under proper authorization), operating therein his delivery business as he was entitled to do.
 

 In 1935 Monvoisin removed his business to new quarters located at 425 North Liberty Street, the garage then being insufficient in size to accommodate it. For the next six years, during which he still owned the Belfort Avenue properties, he continued to reside at No. 3201; but he kept the adjoining garage closed and personally made no use of it, except for occasionally and temporarily storing therein a few-small items such as pieces of old lumber or a bench not needed at the time at the North Liberty Street business place. The only other use made of the garage during that six year period was by the election officials for a polling place and by a small neighborhood social club for storing their tables and chairs, this lasting some six or eight months.
 

 In 1941 Monvoisin sold 3201 and 3205 Belfort Avenue as a unit. Thereafter, they were separated, and in 1949 Leonhardt Brothers purchased the garage building, No. 3205. Meanwhile, between 1941 and 1949, some of the various owners of the garage used it as a warehouse for storing commodities and building materials.
 

 Before acquiring the garage the contracting firm of Leonhardt Brothers knew that it was zoned “A” Residential. One of the partners testified that on investigation he learned that it was in a district so classified. Notwithstanding this previous knowledge the partnership purchased the property and proceeded to use it for commercial purposes, specifically as a contractor’s operating base.
 

 When neighboring property owners complained of this use Leonhardt Brothers filed with the Division of Regulatory Inspections for the City of New Orleans an application in which the following was said:
 

 “Although we maintain that these premises have never lost their nonconforming status and rights under the zoning ordinance, and with full reservation of all our rights in this re
 
 *948
 
 gard, we wish to obtain permission to use the existing building as offices for our contracting Business and for the storage of our trucks and supplies, and to make interior and exterior repairs and alterations so as to improve the appearance and utility of the premises.
 

 “Please issue the necessary documents accordingly.”
 

 The requested permission was denied, and applicant appealed to the Zoning Board of Appeal and Adjustment of New Orleans (created by Ordinance No. 13,649, C.C.S.).
 

 After a full public hearing, at which 28 opponents of the application appeared, the Board adopted on November 2, 1949', to quote from its minutes, the following resolution :
 

 “ ‘Whereas, Leonhardt Brothers filed under date of October 11, 1949, an Application for Variation from the requirements of the Comprehensive Zoning Ordinance to permit the‘use of existing building as Contractors’ Office and Storage of Contractors’ Supplies and Trucks, on the premises, 3205 Belfort Avenue (‘A’ Residence District), and
 

 “ Whereas, the required Building and Occupancy Permits were denied by Mr. S. Logan McConnell, Director, Division of Regulatory Inspections, for the reason that this is an ‘A’ Residence District and such use is not permitted therein, and
 

 “ Whereas, a public hearing was held in connection with this application by the Zoning Board of Appeal and Adjustment at meeting held under date of October 18, 1949, after due notice, at which protest to the granting of the application was offered, and
 

 “ Whereas, this Board is of the opinion that the building in question has existed for many years and has for the greater part of' its existence been occupied by nonconforming uses, and
 

 “ Whereas, this Board believes that if the building is continued to be used under the conditions as outlined by applicant in his communication, dated October 27, 1949, that the surrounding properties will not be further injured, and
 

 “ Whereas, this Board is further of the opinion that to deny this applicant the right to occupy the building for the purpose requested until the expiration of the amortization period would be most unjust and impose an unnecessary hardship upon him,
 

 “ ‘Therefore, Be It Resolved, that the Application for Variation be and is hereby granted under the conditions as herein outlined, and this Board hereby directs Mr. S. Logan McConnell, Director, Division of Regulatory Inspections, to issue the necessary Building
 
 *950
 
 and Occupancy Permits to govern the occupancy of the premises, 3205 Belfort Avenue, for use as a Contractors’ Office and Storage of Contractors’ Supplies and Trucks, until the expiration of the “amortization period” and under the following conditions:
 

 “ ‘1 — Absolutely no manufacturing of millwork, woodwork, or any type of manufacture to be carried out on these premises;
 

 “ ‘2 — No type of pre-fabrication, such as cutting out wall panels, etc.;
 

 “ ‘3 — No keeping of a large force, or any force of men on the premises to do work;
 

 “
 
 ‘4
 
 — The premises are to be kept completely clean and elimination of all rat resting places.
 

 “ ‘5 — -The front of the building is to be kept clean and neat at all times;
 

 “ ‘6^-The building is to be used only for the storage of applicant’s equipment and materials and as an office for their company. It is understood and agreed that the office and warehouse are to be kept quiet.
 

 “ 7 — All automobiles connected with the building and business are to be parked in front of the applicant’s building.
 

 “ ‘Be It Further Resolved, that the variations granted herein govern only variation from the requirements of the Comprehensive Zoning Ordinance No. 11,302 C.C.S. (and amendments thereto), the owner to comply fully with the requirements of the City Building Code and other regulatory ordinances.
 

 “ ‘The Vote To- Grant * * * under conditions outlined * * * until expiration of amortization period:
 

 “‘Affirmative: A. B. Nicholas
 

 Richard Koch
 

 Claude J. Kelly
 

 Robert J. Brennan
 

 Maurice Dufour
 

 “‘Negative: 0.
 

 ‘"Absent: O.’”
 

 Upon the adoption of this, resolution, and acting pursuant to the provisions of Section
 
 7
 
 of Act No. 240 of 1926, LSA-R.S. 33:4727, 55 neighboring property owners instituted this suit in the Civil District Court of Orleans Parish praying for the issuance of a writ of certiorari directed to the Zoning Board of Appeal and Adjustment to review its decision and, ultimately, for judgment annulling and set-ding aside that decision or resoluton. The writ issued without a restraining order. And in the suit Leonhardt Brothers filed a petition of intervention praying that there be judgment rejecting the demands of plaintiffs.
 

 After trial of the case, during which there was introduced a copy of the defendant Board’s proceedings and additional evidence, the district court rendered a judgment in favor of plaintiffs vacating and setting aside the Board’s decision or resolution and dismissing the intervention
 
 *952
 
 of Leonhardt Brothers. From the judgment intervenor requested and was granted the instant suspensive appeal.
 

 In providing for a review by the district court of a decision of the Zoning Board of Appeal and Adjustment, Section
 
 7
 
 of Act No. 240 of 1926, LSA-R.S. 33:4727, states in part:
 

 “Any person or persons jointly or severally aggrieved by any decision of the board of adjustment, * * * may present to the district court of the parish or city in which the property affected is located a petition, duly verified, setting forth that the decision is illegal, in whole or in part, specifying the grounds of the illegality. * * Upon the presentation of such petition the court may allow a writ of certiorari directed to the board of adjustment to review the decision of the board of adjustment and shall prescribe therein the time within which a return may be made and served upon the relator’s attorney, which shall be not less than ten days but which may be extended by the court. * * * The board of adjustment shall not be required to return the original papers acted upon by it, but may return certified or sworn copies thereof or such portions thereof as may be called for by the writ. The return shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision appealed from and shall be verified. If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take additional evidence * * *. The court may reverse or affirm, wholly or in part, or may modify the decision brought up for review. * * * ”
 

 Directing attention to these provisions appellant’s counsel, to quote from their brief, argue:
 

 “ * * * There is only one ground for relief from the Board to the district court as the Statute indicates, and that is an ‘illegal’ decision by the Board. The act does not authorize an appeal from the Board, for example, where the Board has merely made a mistake in the exercise of discretion. * * *
 

 ❖ * * * ❖ *
 

 “We believe it quite clear that the Board’s decision represents the proper exercise of power and discretion under Sec. 7, subd. 3 of Act 240 of 1926 [LSA-R.S. 33:4727, subd. 3], There was no arbitrary or capricious action, which is in the usual basis of review of administrative boards. Certainly the Board did nothing illegal. Hence we say that unless the District Court found that the Board acted illegally, which the District Court failed to do, the Board’s decision should stand.”
 

 The basis for the district court’s judgment is not disclosed by the record.
 
 *954
 
 No written reasons therefor were assigned. The judge might well have concluded that the action of the Zoning Board of Appeal and Adjustment was illegal, it having amounted to a reclassification of intervenor's property in violation of the Comprehensive ’ Zoning Ordinance. That is the conclusion which we reach.
 

 In the recent case of City of New Orleans v. Leeco, Inc., 219 La. 550, 53 So.2d 490, 493, we recognized that such - Board has authority, granted by the laws creating it, to make certain adjustments in carrying out the zoning ordinance by varying or modifying the application of any of the regulations thereof. But we said:
 

 “ * * * From a mere reading of the provisions as outlined, it is apparent that the Zoning Board has no authority to disregard the classification of areas fixed by the zoning ordinance and cannot under the guise of variations waive or suspend same. The regulatory provisions merely authorize the Zoning Board to regulate the construction of buildings, etc. in compliance with the area classification. If it were otherwise, the Zoning Board could abrogate or nullify the zoning law. * * * ”
 

 The Comprehensive Zoning Law, as before shown, - authorizes a continuance of any lawful commercial or industrial use, existing at the time of the passage of the ordinance, of property zoned residential. However, this is subj ect to the proviso that if a building, located in a residence district and continued to be used in whole or in part for nonconforming commercial or industrial purposes, becomes and remains vacant for a continuous period of six calendar months it can not be used thereafter except in conformity with the regulations of the district in which the building is situated. The word “vacant”, as employed in the zoning law, is defined as follows:
 

 “For the purpose of this Ordinance the word ‘vacant5 shall be construed to mean that the building -or land has not been occupied or used in whole or in part, bonafide, by any non-conforming commercial or industrial use for a period of six (6) calendar months. Neither the intention of the owner nor that of anybody else to use a building or lot or part of either for any nonconforming commercial or industrial use, nor the fact that said building or lot or part of - either may have been used by a makeshift or pretended nonconforming commercial or industrial use shall be taken into consideration in interpreting and construing the word ‘vacant5 as used in this ordinance; }{C * * »
 

 From the record before us it appears that the garage in question (3205 Belfort Avenue and zoned residential) was used continuously for nonconforming commercial purposes between 1929 and 1935 by its then owner Mr. Monvoisin, he having conducted therein his parcel delivery business. And it could possibly be concluded that on
 
 *956
 
 occasions after 1941 (when Monvoisin sold) and until 1949 (the time of intervenor’s purchase) some commercial activity was therein carried on. However, the evidence is conclusive that between 1935 and 1941, a period of six years, no bona fide nonconforming commercial or industrial use whatever was made of the building. Monvoisin, the then owner, so testified; and his testimony is corroborated by that of other witnesses. True, infrequently during those six years the place was occupied as an'election polling place and also used for storing small items such as tables, chairs and old pieces of lumber. But such use was only that which is ordinarily made of any large garage building situated on residential property. Therefore, it must be held that, within the contemplation of the Ordinance, the property involved herein became and remained vacant for a continuous period of more than six calendar months; that, as a result of such vacancy, it could not thereafter be used except in conformity with the regulations of a residential district; and that the action of the Board of Appeal and Adjustment, in authorizing intervenor to use it for commercial purposes, amounted to a reclassification of the property and was illegal.
 

 Recently, two other cases came before this court involving the right to use residential property for nonconforming purposes; and in each we concluded, just as we hold here, that there had occurred a vacancy of more than six months which rendered such use improper. See State ex rel. Harz v. City of New Orleans, 216 La. 849, 44 So.2d 889 and Onorato v. Rossignol, 217 La. 751, 47 So.2d 489.
 

 As a final observation we notice that the resolution presently under consideration contains nothing indicative of a finding by the Board of Appeal and Adjustment that a six months’ vacancy had not occurred. The language of the resolution and the testimony of the Board’s chairman, on the contrary, indicate that the Board recognized the occurrence of such a vacancy; but that it decided to grant to intervenor a permit to operate under numerous imposed conditions, hoping thereby to prevent any unnecessary hardship and entertaining the belief that the operations would continue for a very limited period of time. Thus, had there been a finding of nonconforming use of the building without a six months’ vacancy, no reason would have existed for the Board’s specifically restricting intervenor’s commercial activities as it did. Again, according to the testimony of the Board’s chairman, the resolution (adopted November 2, 1949) “extended to Leonhardt Brothers the right to use that building until the end of the amortization period, which would have been, ordinarily, in June, 1949, but by legislative act was extended to June, 1951.” And the resolution itself recites that “this Board is further of the opinion that to deny this applicant the right to occupy the building for the purpose requested until the expiration
 
 *958
 
 of the amortization period would be most unjust and impose an unnecessary hardship upon him.”
 

 For the reasons assigned the judgment appealed from is affirmed.