111 So.2d 363 (1959)
CITY OF NEW ORLEANS
v.
Michael LANGENSTEIN, George Langenstein, Richard Langenstein, George & Richard Langenstein, Doing Business as Michael Langenstein & Sons or Langenstein Brothers.
No. 21103.
Court of Appeal of Louisiana, Orleans.
April 13, 1959.
Rehearing Denied May 11, 1959.
Certiorari Denied June 25, 1959.
*364 Alvin J. Liska, City Atty., and Joseph H. Hurndon, Asst. City Atty., New Orleans, for plaintiff and appellee.
Racivitch, Johnson, Wegmann & Mouledoux and Leon F. Cambon, New Orleans, for defendants and appellants.
McBRIDE, Judge.
On a previous occasion we modified and affirmed the issuance of the writ of preliminary injunction in this suit in which the City of New Orleans seeks to enjoin the defendants from occupying and putting to use for business or commercial purposes and to compel them to demolish and remove certain portions of their premises, which are part of No. 1300 Arabella Street in New Orleans, because of alleged violations of the provisions of the Comprehensive Zoning Law of New Orleans (Ordinance No. 11,302, C.C.S., as amended) and New Orleans Building & Electrical Code (Ordinance No. 15,528, C.C.S.). We remanded the matter to the lower court to be proceeded with on the merits in accordance with law. See 91 So.2d 114, 119.
During the course of our opinion we said this:
"Our conclusion is that there is enough evidence in the record to make out a prima facie case to support the issuance of the preliminary writ of injunction, and there appears there was no abuse by the trial judge, save as above noted, of his discretion in the issuance of the writ. Of course, we are not passing on plaintiff's right to a permanent injunction, as this feature of the case must await a trial on the merits."
Our concern now is with the judgment rendered by the court below after a trial of the merits in favor of the City of New Orleans and against defendants perpetuating the preliminary writ of injunction heretofore issued to the extent of forever enjoining, restraining and prohibiting the defendants, their heirs and assigns, and all persons holding under them from occupying and using for business or commercial purposes the following portions of the premises bearing Municipal No. 1300 Arabella Street, New Orleans, Louisiana, more fully described on sketch of George S. Bisso, dated December 4, 1947, approved by Nat Marks, Jr., City Engineer, to-wit:
A. An addition to the Pitt Street side of the original structure and attached *365 thereto measuring approximately 23 feet by 23 feet and extending some 23 feet in the direction of Pitt Street;
B. The addition to the original structure which is attached to the rear of the original building and extends along Prytania Street for a distance of 31 feet 2 inches;
C. The permanent brick and wood structure occupying the entire rear portion of the lot, which structure measures 47 feet 6 inches along Prytania Street and 49 feet from Prytania Street to the dividing line of the adjacent lot No. 5.
Defendants have prosecuted this devolutive appeal. The city has neither appealed nor made answer to defendants' appeal.
The electrical sign which defendants erected and maintained on their premises, which the city alleged was in violation of the provisions of Ordinance No. 15,528, C.C.S., has been removed by defendants, so that feature of the case no longer remains an issue.
The record shows that the father of the present defendants acquired the lot of ground upon which the improvements in controversy are located during the year 1924. The lot, forming the corner of Arabella and Prytania Streets, is in the square bounded by Nashville Avenue and Pitt Street. It is a conceded fact that when the elder Mr. Langenstein purchased the property, there was located on the front portion of the lot a two-story frame building, the lower floor of which had been used for the operation of a grocery store, which enterprise was continued by Langenstein and/or his sons, the present defendants. The city does not pretend that the operation of the business in the original area of the front part of the premises contravenes the provisions of the Comprehensive Zoning Law; on the contrary, the City Attorney concedes that the portion of the building in which the business was located when the ordinance became effective in 1929 acquired a nonconforming status and it is not adversely affected by Ordinance No. 11,302, C.C.S., but is protected by Sections 10(a) and 10(b) thereof.
The lot of ground upon which the controverted buildings exist is situated in an "A" Residential District in which commercial businesses or establishments are prohibited by the Comprehensive Zoning Law. The first contention of the city which, incidentally, is the only one that need be considered is that the additions to the original structure, designated buildings "A," "B," and "C" in the judgment, were erected subsequent to the effective date of the Comprehensive Zoning Law and are utilized for business and commercial purposes contrary to the provisions of the ordinance.
The defendants deny the subsequent erection of additions to the original; they aver that the buildings were in existence prior to the year 1928. While defendants admit the brick structure was erected in 1946, they claim it replaced other structures with the approval of the Board of Health of the City of New Orleans. Counsel in brief say defendants "never changed the use of the property from the day they bought it until the day the district court made them vacate. They used every inch in an attempt to supply an ever increasing clientele." They contend that the operation of the store necessitated modernization and expansion; that defendants changed outside iceboxes to modern indoor refrigeration; that they sanitized their facilities for cooking and cleaning poultry; and from old-fashioned storage, they went to modern structures for warehouse purposes. They maintain their property has the status of being nonconforming and they have the unqualified right to use it in their business pursuits.
Appended to and made part of this opinion is the unscaled sketch which accompanied appellants' brief which, we agree, goes far to elucidate what portions of the property are in dispute and sets forth in *366 a concise way the claims pro and con with reference as to when the disputed parts of the property were erected and came into commercial use.

When the matter was before us on the appeal from the judgment ordering the issuance of the preliminary writ of injunction, we reached the conclusion there *367 was sufficient evidence to support the city's position that a prima facie case had been made out a predicate for the issuance of a writ. Although we said "prima facie case," it could have been properly said the city had made out its case by a preponderance of the evidence, but we refrained from saying as much because we did not feel privileged to prejudge the case in the matter of the permanent injunction not knowing whether new or additional evidence would be introduced when the merits were reached for trial.
In the course of the trial on the merits, the evidence previously taken was reintroduced, and in addition thereto the defendants produced witnesses who gave certain testimony which is cumulative in effect. The City Attorney produced no new evidence.
After reviewing the record before us, taking into consideration the newly-introduced evidence, we do not believe the defendants should prevail on the final phase of this proceeding, and it can now be said the city has made out its case by a preponderance of the evidence.
The testimony of neighbors of defendants' establishment, one of whom lives but 40 feet therefrom and the others within close proximity, makes particular impression upon us. One of these stated that in the spring of 1936 the Langensteins purchased bricks from a chimney of a building she had demolished, and these bricks were used in a construction project on the Pitt Street side of the Langenstein building. It was also shown by evidence, supported by official records, that about or before 1938 the neighbors made protest to city officials that additions were being made to the Langenstein premises. If the buildings had been in existence prior to 1929 as the defendants maintain they were, it would not be reasonable to assume that the neighbors would have complained in 1938. We conclude the complaints originated at about the time of and were evoked by the new construction which was taking place.
Appellants also maintain the trial judge erred in his interpretation of Sections 10(a) and 10(b) of Ordinance No. 11,302, C.C.S., as amended, and also in his application of these sections to the facts of the case. They argue that said sections not only have reference to the right of a property owner to continue the use of lands and buildings which had been put to a nonconforming use prior to 1929, but go even further and create an exemption for nonconforming uses which did not exist when the ordinance was adopted, and the contention is advanced that in view of the different rules, one for nonconforming land and another for nonconforming buildings, the trial judge failed to give defendants the benefit of the distinction that exists as between Sections 10(a) and 10(b).
The language of said respective sections of the Ordinance reads thus:
"Sec. 10. (As amended by Ordinance 15,999, C.C.S.) Non-Conforming Use. (a) Existing Use of Land or Portion Thereof: Be It Further Ordained, etc., That the lawful use of land, or portion thereof, existing at the time of the passage of this ordinance, although such lawful existing use does not conform to the provisions hereof, may be continued except as hereinafter provided in paragraphs (c) and (d), but if such non-conforming use is discontinued, prior to the time allowed in paragraphs (c) and (d), any future use of said land, or portion thereof, shall be in conformity with the regulations of the district in which it is situated. (Same as amendment by Ordinance 13,749, C.C.S.)
"(b) Existing Use of a Building or Portion Thereof. The lawful use of a building, or portion thereof, existing at the time of the passage of this ordinance may be continued except as hereinafter provided in paragraphs (c) and (d), although such lawful existing use of said building or portion thereof does not conform to the provisions hereof, provided, that the lawfully *368 existing non-conforming use shall not be expanded so as to encroach into any other portion of the building, and provided further, that no structural alterations except those required by law or ordinance shall be made in the non-conforming building or non-conforming part of a building.
"If no structural alterations are made except those required by law or ordinance, and further if the non-conforming square foot area and/or non-conforming cubical contents of a building or portion thereof occupied by a legally established non-conforming use are not increased, then a legally established non-conforming use of a building or portion thereof may be changed to other non-conforming uses of the same or more restricted classification, but in no case exceeding two such uses. (Same as amendment by Ordinance 13,749, C.C.S.)"
The gravamen of counsel's claim is that whereas language similar to the prohibitive phrase in Section 10(b) "provided, that the lawfully existing non-conforming use shall not be expanded so as to encroach into any other portion of the building" is not to be found in Section 10(a) which, it is said, has reference to the use of land and not structures thereon, the rear portion of the lot, which was used in conjunction with the original grocery store before 1929 for the purpose of storing crates, raising and cleaning chickens, and for parking of wagons and automobiles, may still be so utilized, and that it is within the contemplation of Section 10(a) that buildings may be lawfully erected on the nonconforming land for the purpose of continuing the nonconforming commercial uses. The following is quoted from counsel's brief:
"Unless there was some prohibition against the erection of a building on this commercial site, the Langensteins were fully within their legal and statutory rights in erecting the new buildings A, B, and C. * * *"
Counsel would have us place a strained and unreal construction on the provisions of the sections of the ordinance referred to.
Taking the sections in inverse order, the pertinent provisions of 10(b) are clear in their import that when part of a building is clothed with a nonconforming status, the nonconforming use shall not be expanded into any other section of the building and no structural alterations, except those required by law or ordinance, shall be made in the nonconforming building or to the nonconforming part of the building. Under these provisions the Langensteins' original grocery store could not be "expanded * * * into any other portion of the building" in which it was located, and structural alterations not required by law or ordinance may not be made by defendants to said nonconforming portion.
Section 10(a), upon which appellants rely, insofar as it provides that the lawful nonconforming use of the land, or portion thereof, existing at the time of the passage of the ordinance may be continued, should not be given an interpretation as would mean that when open or vacant land is clothed with a nonconforming status, buildings may be erected on the land in order to carry on the nonconforming uses.
It is a fact that the unimproved rear and Pitt Street side portions of the lot on which the original grocery store stood prior to 1929 were used for some nonconforming purposes, as well as for purposes not to be considered nonconforming, such as for laundering clothes, etc., and it may be that defendants could have lawfully persisted in using the land for the nonconforming purposes to the present time, but that is not the question before us. The question is whether the buildings which they erected on the land since the adoption of the ordinance and in which their business is conducted should be given a nonconforming status. We must answer in the negative. Whatever right they may *369 have had to use the land for nonconforming purposes did not have such force as to authorize the erection of buildings thereon for nonconforming uses.
There were some sort of small wooden sheds with tin roofs, or other buildings, located on the rear of the lot at the time Langenstein acquired it in 1924, but these were demolished and the brick structure "C" was erected, admittedly in 1946, to take their place. Said structure not only occupies the area on which the original sheds stood but also occupies the open portion of the rear yard on which there were no buildings. All this is in clear violation of both Section 10(a), with reference to the land, and Section 10(b), with reference to structural alterations made in the nonconforming buildings which previously existed.
It must be recorded as a fact clearly appearing from the evidence that additions "A," "B," and "C" cannot be considered as having attained a nonconforming use status, as defendants contend they have, because of their existence on the lot of ground prior to the effective date of the Comprehensive Zoning Law. They were erected subsequent to the advent of the ordinance. Nor can it be held that said improvements were lawfully erected and can be maintained because of their location on land which might have been lawfully used for nonconforming purposes at the time of the passage of the ordinance.
Counsel for appellants point out, and it is true, that certain building and electrical permits were issued by city departments; inspections were made by city officials while the construction work was in progress; that part of the warehouse area on the rear property line was demolished at the city's request, and it was the request of the City Board of Health that prompted the erection of the brick building "C" in 1946. Such circumstances cannot improve appellants' position to any extent. We know of no statutory law or other authority which gives to any city official or to any city board or department the arbitrary right to waive in favor of any land proprietor the city's right to enforce a compliance with the provisions of the Comprehensive Zoning Law.
Appellants' counsel cite us to State ex rel. Szodomka v. Gruber, 201 La. 1068, 10 So.2d 899, wherein the Court held that a vacant piece of ground in an area classed as "A" Residential District was not being used for commercial purposes because patrons of the adjoining restaurant were permitted to park there without the payment of a fee while dining inside the restaurant. The cited case has no application, as it may readily be distinguished from the one under consideration.
The law and the evidence support the perpetuation of the preliminary injunction; therefore, the judgment appealed from is affirmed.
Affirmed.