129 So.2d 614 (1961)
W. B. WRIGHT et al., Plaintiffs-Appellees,
v.
Anthony P. DE FATTA et al., Defendants-Appellants-Appellees.
No. 9424.
Court of Appeal of Louisiana, Second Circuit.
March 10, 1961.
Dissenting Opinion March 24, 1961.
Rehearing Denied April 12, 1961.
Certiorari Denied May 30, 1961.
*615 Ferdinand A. Cashio, Shreveport, for appellants.
Charles M. Peters, Roy B. Tuck, Jr., and Hugh T. Ward, Shreveport, for plaintiffs-appellees.
J. N. Marcantel and J. Bennett Johnston, Jr., Shreveport, for City of Shreveport, defendants-appellees.
Before HARDY, GLADNEY, AYRES and BOLIN, JJ.
BOLIN, Judge.
The plaintiffs herein are twelve individuals who reside in the City of Shreveport, Caddo Parish, Louisiana. The relief which they seek is the abatement of an alleged continuing violation of the comprehensive zoning ordinance of the city, being Ordinance 184 of 1957, as amended by Ordinance 65 of 1959. The allegations as to the alleged violations of the ordinance are to the effect that the defendant, Anthony P. DeFatta, has violated various space and yard requirements provided in the ordinance by moving certain houses onto his property located within the corporate limits. In the alternative, the plaintiffs seek a mandamus against the City of Shreveport, requiring it to cause the abatement of the alleged violations.
The record shows that the defendant, Anthony P. DeFatta, is the owner of eight small lots located in the 1900 block of Maple Street. This property is located in an R-3 multiple family residential district as described in the zoning ordinance. Prior to the enactment of the zoning ordinance there were seven houses situated upon the property in issue.
In the early part of 1959 the defendant approached the Shreveport Metropolitan Planning Commission to ascertain if twelve additional units could be moved onto his property on Maple Street. He presented a plat of the area to Mr. Hugh Wells, an employee of the City Planning Commission. Through some misunderstanding, an error, or other unexplained reason, which we do not attribute to Mr. DeFatta, Mr. Wells was given the impression that the plat offered to him for approval showed an area on which one building with multiple units was to be located. Proceeding on this basis, Mr. Wells initialed the plat as having sufficient footage for nineteen units. Based upon this approval by the zoning office, the defendant obtained building permits and proceeded to move the first group of houses, consisting of four in number, onto the property in issue. At this point the then Zoning Administrator, Mr. Joel Taylor, had the four houses posted and informed the defendant that he was violating the zoning ordinance and that no more houses were to be moved onto the property. Whereupon the defendant entered into a "rehabilitation" program with some of the *616 zoning officials and received permission to move three more houses onto the property. This placed fourteen houses on the lots, counting the seven which were already situated thereon. The permission vel non as to moving the remaining five houses onto the property, to bring the total to nineteen, is made somewhat obscure by the testimony of Mr. Joel Taylor. He testified before the Metropolitan Board of Appeals that no such permission was given. On the trial of the rule in the court below, Mr. Taylor stated on direct examination that permission was given for moving the last five houses onto the property. However, on cross-examination Mr. Taylor was unable to explain why, if he had given permission to move the last five houses, he later ordered them posted, the condition in which they remain at the present time.
The plaintiffs herein, in attempting to gain relief through the administrative procedure outlined in the zoning ordinance, first appealed to the Metropolitan Zoning Board of Appeals. Testimony was taken before this body, a copy of which was made a part of the record. The decision rendered by the Board of Appeals was in the following terms:
"Allow Mr. DeFatta to keep and maintain all of the houses within that plot except the last five, which are presently posted and unoccupied. Those five houses shall be removed from the property and the land be kept as an open area for that planned group of houses remaining. It is the decision of this Board that this is considered a building group and a use variance and special exception to the Zoning Ordinance."
Being aggrieved by this decision, and in a further effort to exhaust their administrative remedies, the plaintiffs appealed this decision to the City Council of Shreveport, a procedure provided for by the ordinance. The City Council affirmed the decision of the Board of Appeals and this litigation ensued.
On the trial of the rule in the lower court exceptions of vagueness were sustained by the court and the plaintiffs were ordered to amend their original petition instanter. Exceptions of no cause of action were overruled and, after a hearing on the rule, judgment was rendered in favor of the plaintiffs and against defendant, Anthony P. DeFatta, granting the preliminary injunction as prayed for. From this judgment the defendant now appeals.
Although the court below did not assign written reasons for its judgment, the decision was apparently predicated on a finding that the provisions of the municipality's Comprehensive Zoning Law did not extend to the Board of Zoning Appeals the power to grant an exception or use variance as was exercised in this instance.
Having made the rule absolute against the defendant, Anthony P. DeFatta, the lower court found it unnecessary to pass upon the plaintiffs' alternative plea for mandamus against the City of Shreveport.
The issue before us is whether the decision rendered by the Shreveport Metropolitan Zoning Board of Appeals as affirmed by the City Council is in excess of the powers conferred upon that administrative body by the provisions of the State Enabling Act and the Shreveport Comprehensive Zoning Ordinance.
Ordinance Number 184 of 1957, as amended by Ordinance Number 65 of 1959, of the City of Shreveport, Louisiana, is a comprehensive zoning ordinance enacted to regulate all phases of the use of lands located in the metropolitan area. In accordance with such comprehensive regulation of land use, different areas are given district numbers and the land uses in a particular district are regulated under the appropriate section of the ordinance.
In the instant case there is no dispute but that the property in question is located in an R-3 multiple family residential district. The zoning regulations specifically applicable to this district are found under *617 Section II, Part B, Subsection 4 of the ordinance. Under this subsection the minimum building site area for a one-family dwelling is 7,200 square feet. The minimum dimensions of yards in this district are also designated to be: Front yard30 feet, side yard5 feet, rear yard25 feet.
The lots in question owned by the defendant are shown on that survey made a part of the record herein. This survey reveals that there are seven lots measuring 40 feet by 140 feet, for a total of 5,600 square feet per lot and one lot measuring 25 feet by 140 feet or 3,500 square feet. There are presently nineteen single family dwellings located upon the lots. Thus, it can readily be seen that the minimum building site area as provided by the ordinance has been grossly violated. It is also readily apparent that the minimum yard requirements are not complied with as provided by the ordinance.
Under Section I, Subsection "Building Site" of the ordinance, it is provided that every building must abut upon a street. The survey reveals that ten of the existing structures are located on the rear of the lots and do not abut upon a street. From the foregoing there is no question but that the provisions of the ordinance governing the R-3 multiple family residential district have been violated by the defendant in the 1900 block of Maple Street.
The defendant, Anthony P. DeFatta, takes the position that the Board of Appeals acted within the scope of its authority in rendering the decision relative to his property. It, therefore, becomes important to examine the powers granted to the Board of Appeals and the limitations thereon.
The Board of Appeals is an administrative body created by the zoning ordinance to perform certain duties and having designated powers relative to certain specified zoning problems.
The powers of the Board of Appeals are expressly limited under Section VII, Part "C", Subsection 5 of the zoning ordinance, as follows:
"Except as is provided in Act 34 of 1954 and also except as may be necessary to carry out the powers of the Board granted by said legislative act and by the terms of this ordinance, nothing herein contained shall be construed to empower the Board to change the terms of this ordinance, to effect changes in the zoning map, or to add to the specific uses permitted in any district; and to that end, the powers of the Board shall be so construed as to carry out the purposes and intent of this ordinance and the zoning map." (Emphasis added.)
The decision rendered by the Board, therefore, should be considered in order to determine what its findings were under the ordinance in question. That decision, in its pertinent part, reads as follows:
"It is the decision of this Board that this is considered a building group, and a use variance and special exception to the zoning ordinance." (Emphasis added.)
Since the Board first characterized the nineteen houses owned by the defendant as a "building group", we must ascertain what the ordinance provides in reference to such "building groups". Section IV of the ordinance deals in detail with "planned building groups". As indicated under Part "A" of that section, the building group is "For the purpose of allowing and encouraging greater variety of design and flexibility of location for buildings comprising a planned group, the provisions of this section waive the requirement for a separate building site for each building and permit two or more buildings to be erected and maintained on the same Building Site when certain conditions hereinafter set forth are met". Part "B" of the section then provides that provisions for drainage, circulation, play areas and protection for residential areas shall be provided. Part "C" then outlines in detail the procedure to be followed in *618 securing approval for a building group, among which are: (1) application for approval; (2) investigation and recommendation by the Office of Zoning Administration; and (3) review and approval by the Planning Commission. The record in this case reveals, and the fact is undisputed, that none of the procedure to obtain approval for a building group as outlined above was followed. We do not feel that nineteen separate "shotgun" type houses crowded onto eight small lots can be considered a "building group" under the terms of the ordinance.
The defendant, DeFatta, takes the position that the "building group" referred to by the Board in its decision is something entirely separate and apart from that described in Section IV. That this position is untenable will be shown by an examination of the "special exceptions" section upon which the defendant relies for this contention.
This is found in Section VII, Part C, Subsection 6(c) of the ordinance and reads as follows:
"To authorize, in specific cases where the ordinance calls for review and determination by the Board, such special exceptions as will permit the construction and use of a building or building group or the use of land in accordance with a definite site plan." (Emphasis added.)
It is first necessary to determine if this is a "specific case where the ordinance calls for review and determination by the Board". The defendant passes over this provision lightly by stating that it is such a case since there was an appeal by the parties to the Board. However, it does not necessarily follow that an appeal to the Board in this case presents a case where the ordinance "calls for review or determination by the Board". Although an appeal may be allowed, the ordinance does not automatically "call for" such under the present facts. The basic fallacy in the defendant's position that the "building group" mentioned in the "special exceptions" provision is not that referred to in Section IV of the ordinance is the fact that the latter section contains the only other reference to a "building group" in the entire ordinance. The intended purpose of the "special exceptions" provision relied upon so heavily by the defendant can be readily discovered by a close examination of the ordinance. Thus, under Section II, Part B, Subsection 4A(3), "Special Exception Uses", it is provided that certain land uses are "subject to approval of the Board in accordance with the provisions of Section VII governing Special Exceptions". We do not feel that the uses listed and referred to include the existing condition presently maintained by the defendant.
If the defendant's contention that nineteen houses crowded side by side and back to front on eight small lots can legally be termed a "special exception" by the Board of Appeals is maintained, then it would be difficult to say where the power of this Board would end.
The third term used by the Board in its decision was that the houses were considered as "use variance" to the ordinance. The defendant contends that this statement is supported under Section VII, Part c, Subsection 6(D) of the ordinance. This subsection provides that in cases of exceptional narrowness, shallowness, shape, topographic conditions or other extraordinary and exceptional characteristics of such piece of property, then the Board may grant a variance. Clearly this section does not empower the Board to render such a decision as was done in the instant case. The record does not show any "exceptional or extraordinary" characteristics of Mr. DeFatta's land.
Act 34 of 1954 is the State Enabling Act for the municipal ordinance in question. Section 32, under the sub-heading "Powers of the Board of Appeals" contains almost the identical language as contained in the *619 ordinance. In connection with "special exceptions" this Act provides that the Board shall have power:
"To hear and decide, in accordance with the provisions of any such ordinance, request for special exceptions or for interpretations of the map or for decisions upon other special questions upon which such board is authorized by any such ordinance to pass." (Emphasis added.)
The next subsection of the Act empowers the Board to grant "variances" in the same language as that contained in the ordinance. From the foregoing it is noted that the Board is granted the power to allow a "special exception in accordance with the provisions of any such ordinance". Therefore, we are again referred to that portion of the ordinance which we have previously set forth herein which expressly limits the power of the Board.
The defendant further contends that by all principles of equity he should not be compelled to move the houses in question at a great financial loss to him after having been authorized to take the action which he did by various city officials. In this connection, we are of the opinion that the record substantiates the claim of Mr. DeFatta that he acted in good faith throughout, and it is possible that the Municipal Board and the City Council were moved by such equities when rendering their decisions. However, the suit we have before us was not instituted by the city, but was brought by neighboring property owners within the city, and as such, they are not estopped by any permission or representations made by the municipal employees. On this question, the weight of authority throughout the United States, including Louisiana, is that a defendant in such a case does not secure any such vested rights, regardless of the permission given by city employees, nor the expenditure of any money on his part in reliance thereon. In such cases, if the acts of the municipal employees were in violation of the municipal ordinances, the plaintiffs have the right as citizens of the municipality to have the ordinance enforced. City of New Orleans v. Lagenstein, La. App., Orleans 1959, 111 So.2d 363, certiorari denied.
From our examination of the briefs, and independent research, we have concluded that the exact factual situation involved herein is res nova in our jurisprudence. We have been cited to only two cases which we consider in any way similar to the question before us, which are City of New Orleans v. Leeco, Inc., 1951, 219 La. 550, 53 So.2d 490; State ex rel. Harris v. Zoning Board of Appeal and Adjustment, 1952, 221 La. 941, 60 So.2d 880. The above cases were cited by counsel for both the plaintiff and defendant and it is argued that the language in such cases is favorable to both litigants herein. The holding in these cases is generally to the effect that the Zoning Board of Appeal in New Orleans had no authority to grant an exception to the zoning ordinance where such exception had the effect of changing the classification of the property involved from commercial to residential. We do not feel that these cases lend much aid in deciding the issue now before us because here we do not have the question of a reclassification of property.
In their brief, counsel for the City of Shreveport, have additionally urged that the acts and decisions of the Metropolitan Zoning Board of Appeals and the City Council should be given great weight and should not be altered unless they were clearly arbitrary or unreasonable. We are certainly in accord with the general principle of law that the acts and decisions of municipal officers or official boards should not be set aside unless clearly illegal. However, we do not construe this case as one where we have before us the review of any discretionary act done by a municipality pursuant to a specific grant. By ordinance Number 65 of 1959, the comprehensive zoning ordinance was amended so as to permit the City Council to review certain decisions of the Board *620 of Appeals, and the following provision is found therein:
"Any person aggrieved by a decision of the Board of Appeals, may within 10 days from date of such decision, file a written request with the City Council of the City of Shreveport, for a review of said decision by said Board of Appeals, and thereupon the said City Council shall proceed to review said decision. After said review the City Council shall either affirm, modify or reverse the decision rendered by said Board of Appeals."
Pursuant to this ordinance, the City Council reviewed the decision of the Board and rendered the following decision:
"It is the decision of the City Council of the City of Shreveport, Caddo Parish, Louisiana, that the decision of the Metropolitan Shreveport Board of Appeals herein, dated January 28th, 1960, be and the same is hereby affirmed and reinstated.
"Specifically, the decision of the Metropolitan Shreveport Board of Appeals which is hereby affirmed is in Case No. BAC-36 and was rendered, as aforesaid, on or about January 28th, 1960."
It is, therefore, apparent that the acts of the City Council in this case were purely of an administrative, or quasi judicial nature. The acts of the Council not being in any way legislative in nature, we feel that the matter is again narrowed to the one issue as to whether the exceptions granted Mr. DeFatta were authorized by the city ordinance. Having decided that such actions were not authorized by the ordinance, it is our opinion that the judgment of the court below should be affirmed at appellant's costs.
Affirmed.
HARDY, Judge (dissenting).
Briefly stated, my objections to the majority opinion are, First, a conviction of error with reference to the conclusion that the legislative power of the Board of Appeals, as exercised in the instant case, did not comprehend a justified "special exception" under the facts established; Second, that the action of the City Council in approving the decision of the Board of Appeals can be summarily dismissed from consideration on the ground that the same constituted an administrative or quasi judicial action, and, finally, that the defendant, who acted in good faith and upon the strength of the appropriate procedure and approval by the proper municipal authorities, should be penalized therefor.
While it is true that ultra vires exceptions to the zoning laws should be curbed, it is equally important for courts to preserve the right of duly constituted and empowered municipal authorities to make exceptions in certain instances. Otherwise the regulations would lose the essential flexibility which is not only desirable but necessary in their equitable construction and application.
I respectfully but firmly dissent.