193 So.2d 291 (1966)
Guy R. BOYD
v.
Thomas F. DONELON, Parish President and Harrison Schouest, Jr., Safety Director.
No. 2415.
Court of Appeal of Louisiana, Fourth Circuit.
December 5, 1966.
Rehearing Denied January 9, 1967.
Writ Refused March 10, 1967.
*293 Zelden & Zelden, Sam Monk Zelden, New Orleans, for plaintiff-appellant.
Louis G. DeSonier, Jr., Ferdinand M. Lob, Metairie, for defendants-appellees.
Montgomery, Barnett, Brown & Read, Walter M. Barnett, Albert Mintz, New Orleans, for intervenors-appellees.
Before YARRUT, SAMUEL and CHASEZ, JJ.
YARRUT, Judge.
Plaintiff appeals from a judgment dismissing his suit for a permanent injunction to prohibit officials of Jefferson Parish from enforcing the revocation of two building permits, vacating a preliminary injunction previously rendered in his favor and, in addition, requiring him to cease construction of two multi-family dwellings, and to demolish and remove them.
On February 10, 1956, Plaintiff was issued a building permit to construct a four-unit apartment dwelling at 323 Iona Street, and on August 24, 1956, was issued a permit to construct a four-unit dwelling in the rear of an existing building at XXX-XX-XX Hector Street, both in Metairie, Louisiana. On August 3, 1962, the Safety Department of the Parish of Jefferson revoked both permits.
On March 30, 1964, on application of Plaintiff, the two permits were reinstated, but, on May 28, 1964, they were again revoked. On June 16, 1964, Plaintiff filed suit asking for an injunction against Thomas F. Donelon, Parish President, and Harrison Schouest, Jr., Chief of Regulatory Inspections and the Safety Department, to restrain them from enforcing an order revoking the two building permits. After hearing on the preliminary injunction, judgment was rendered enjoining Defendants from enforcing the revocations. From this judgment Defendants took a suspensive appeal to this Court. On March 16, 1965, we maintained a motion continuing the case until after the hearing on the permanent injunction.
Meanwhile, on September 14, 1964, eleven persons who lived in the vicinity of the sites covered by the permits, filed a petition of intervention praying that Plaintiff's suit be dismissed, and that Plaintiff be orderded to remove any and all buildings and improvements which he had constructed on the sites in question. After a lengthy trial, in which 1270 pages of testimony were taken over a period of more than six months, the District Court rendered judgment in favor of the Defendants and the Intervenors, dismissing Plaintiff's suit, vacating the preliminary injunction previously rendered, declaring Plaintiff's building permits null and void, and ordering Plaintiff to demolish and remove all improvements erected on the sites covered by the building permits within "a reasonable time." (It is agreed by all parties that the appeal from the preliminary injunction is now moot.)
On appeal Plaintiff contends:
1. That the Intervenors have no cause or right of action.
2. That the Parish of Jefferson had no right to revoke his building permits.
3. There is no provision in the Zoning Ordinance which authorizes the destruction or removal of buildings erected in contravention thereof.
Because it is basic to all of Plaintiff's other contentions, we will first consider the question of whether or not the building permits were properly reissued on March 30, 1964.
*294 Article 201 of the Jefferson Parish Building Code provides, inter alia:
"If after issuance of a permit, the operation authorized thereunder be not commenced within six (6) months after date of permit, or if after commencement of operations, the work be discontinued for a period of six (6) months, such permit shall be re-submitted for approval by the Director for which no additional fee will be charged."
The Trial Judge found as a fact, with which finding we agree that from 1956 until 1962 when his permits were revoked all that Plaintiff had constructed at 323 Iona Street was a concrete slab and all that he constructed in the rear of XXX-XX-XX Hector Street was the shell of a frame structure which was covered with tar paper. Further Plaintiff did nothing to have his permits reinstated until March 1964 and it was not until May of 1964 that he resumed construction on the two buildings.
A summary of the testimony of the nineteen neighbors who appeared on behalf of Defendants and Intervenors was that many six-month periods elapsed between construction activity on the two buildings; that there was no construction on the Hector Street property after the erection of the frame of the building in 1960; and no construction on the Iona Street property after the pouring of the concrete slab in 1962. The testimony of the Parish Building Inspectors who inspected the properties from 1956 until 1962 was confusing and we conclude that they did not have any first-hand knowledge whether or not there was any additional construction at the two sites.
Plaintiff's only witness besides the Parish Inspectors was Mr. Max Soileau a carpenter who billed Plaintiff a total of $564.50 during the six-year period between 1956 and 1962. Although his bills indicated that he also did work at sites other than the two involved in this case, he had no record of what work was done at either site. Mr. Soileau testified Plaintiff paid mostly by check, but Plaintiff could not produce any cancelled checks. Further, Plaintiff could produce no other contractors or materialmen or any bills or receipts for work done on the two properties. It is clear that Plaintiff discontinued work for more than a period of six months without resubmitting his permit for approval, in contravention of Article 201 of the Jefferson Parish Building Code, cited supra.
As a result of the paucity of construction between 1958 and 1964, Plaintiff forfeited any right he ever had to construct multi-family dwellings in the neighborhood in question.
In August of 1958, approximately two years after the issuance of one building permit and one and a half years after the issuance of the other, the Jefferson Parish Council enacted a comprehensive zoning ordinance (No. 3813) in which the Metairie neighborhood, for which Plaintiff's multi-family dwelling permits were issued was zoned R-1, Single Family Residential. The following were two of the provisions concerning non-conforming use:
"Nothing in the Ordinance shall require any change in the plan, construction or intended use of a building, which is under construction at the effective date of the passage of this Ordinance and the construction of which shall be diligently pursued until its completion." Ordinance No. 3813, Article XV (1).
* * * * * *
"The non-conforming use of land shall be discontinued within five (5) years from the date of adoption of this Ordinance where no buildings are employed in connection with such uses, provided, however, that the Board of Zoning Appeals may, upon appeals, grant an extension, not to exceed a five-year period if in the opinion of the Board such continued use will not cause annoyance or injury to adjoining premises, which extension may be further extended for a *295 like period." Ordinance No. 3813, Article XV (7).
Thus Plaintiff lost his right to erect "non-conforming use" buildings for two reasons: (1) He did not "diligently" pursue construction until its completion, a requirement of Ordinance No. 3813, Article XV (1), cited supra. It was the uncontroverted testimony of Mr. Hans Schlesinger, a contractor of eighteen years experience, that buildings such as the ones for which Plaintiff received permits, could be constructed in six months; (2) The non-conforming use of Plaintiff's land was discontinued because no buildings were employed in connection with such use for a period of more than five years. Ordinance No. 3813, Article XV (7), cited supra.
Moreover, Plaintiff was guilty of the following additional violations of the Zoning Ordinance and Building Code of Jefferson Parish:
1. He did not submit any plans and specifications with his applications for permits as required by Article 203 of the Jefferson Parish Building Code. When questioned, he testified he could not name the architect he had hired to draw the plans; nor could he produce a copy of the plans themselves. In addition, in an affidavit, Mr. Harrison Schouest, Jr., Chief of Safety and Regulatory Inspections, stated that no plans and specifications had even been submitted by the Plaintiff;
2. His failure to obtain certificates of use and occupancy (as required by Section XXIII of the Zoning Ordinance) was also attested to in an affidavit by Mr. Schouest;
3. He did not provide for one off-street parking place per dwelling unit as is required by Ordinance No. 3117 adopted April 4, 1956. According to the uncontroverted testimony of neighbors, no off-street parking at all is provided for the structure at 323 Iona Street and, although there is a parking area large enough for two cars at Plaintiff's Hector Street property, cars must be parked over the sidewalk, thus blocking its use by pedestrians;
4. He did not restrict the size of his building in the rear of XXX-XX-XX Hector Street to that allowed in his building permit. Mr. F. C. Gandolfo, a surveyor, testified that, although the permit is for 3564 square feet, the actual square footage of the present building is 4540, or a difference of approximately 1000 square feet.
Also, according to Mr. Gandolfo's survey, there is less than three feet between the exterior of the new building at the rear of XXX-XX-XX Hector Street and the property line, in violation of Article 1403 of the Jefferson Parish Building Code;
5. He failed to provide a rear-yard area for the Hector Street building as is required by Section VII (4-3A) of the Zoning Ordinance which states that "There shall be a rear yard having a depth of not less than twenty (20) percent of the depth of the lot, provided, however that the depth of such rear yard shall be not less than fifteen (15) feet and need not exceed twenty-five (25) feet." Mr. Gandolfo testified the Hector Street building had virtually no rear yard at all, being constructed three feet from the rear property line.
For the above reasons we conclude that the building permits were improperly reissued on March 30, 1964. In the light of this fact, we will now consider Plaintiff's three main contentions on appeal.
1. Plaintiff first contends Intervenors have no cause or right of action, relying on United Gas Pipeline Co v. Louisiana Public Service Commission, 241 La. 687, 130 So.2d 652. In the cited case, the petition for intervention was dismissed because the intervenor did not show that its interest was a direct one, or that it would obtain immediate gain or suffer immediate loss by the judgment which might have been rendered between the parties. However, in discussing this case in the Louisiana Law Review, Henry G. *296 McMahon, Coordinator and Reporter of the Code of Civil Procedure, pointed out that it was tried prior to the effective date of the present Code of Civil Procedure which abrogated the old jurisprudential rule that required immediate gain or loss. Because the right to intervene has been broadened by LSA-C.C.P. article 1091 which provides, "A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto * * *", it was his opinion that, under the new Code, a different result would have been reached in the United Gas Pipeline case. See 22 La.L.Rev. 370, 372-74.
Moreover, we feel that, even under the former immediate-gain-or-loss rule, the eleven neighbors of Plaintiff have the right to intervene in this case. Intervenors and their neighbors testified they feared the depreciation of their property from the construction of more multi-family dwellings in their neighborhood and the attendant over-crowding, traffic congestion and lack of adequate parking spaces. One phase of the parking and traffic problem was documented by photographs of Plaintiff's apartment building in the rear of XXX-XX-XX Hector Street showing automobiles parked over the sidewalk; completely blocking it. Further, Mr. Eugene Aschaffenburg, a realtor and developer, testified that, in spite of the fact there were other multi-family dwellings in the neighborhood, the addition of Plaintiff's two multi-family dwellings would have an adverse effect on property values in the neighborhood in general and, in particular, on those dwellings close to the new apartment buildings. In this connection, seven of the intervenors, who testified, lived within a block of at least one of these new multi-family dwellings. In addition, Mrs. Steven A. Schmedtje, Jr. testified that her husband and her father-in-law tried to sell a single-family dwelling in the same block as that of the Hector Street apartment house during the period when construction was proceeding on that building; that approximately ten of the persons inquiring about their advertisement asked if the apartment building was still going up; and that when she answered in the affirmative, they indicated this would preclude any further consideration of their buying the property. Mrs. George Penn, a real estate agent, testified she encountered the same problem when trying unsuccessfully to sell the home of Mrs. John W. Bick at 320 Iona Street, which is directly across the street from Plaintiff's apartment building, 323 Iona Street. We agree with the Trial Judge, who in his reasons for judgment, commented on the damage suffered by Intervenors as follows:
"The Plaintiff's disregard of the law and the rights of his neighbors has resulted in the erection of structures which have depreciated the value of his neighbors' property. The multi-family dwellings are not only in violation of the comprehensive zoning ordinance provisions designed to protect one-family dwellings but the violation of the parking ordinance has forced Plaintiff's tenants to park their automobiles in the front of their apartment building forcing pedestrians to walk off the sidewalks in the street. The Court believes that the Intervenors' right to the enjoyment of their homes has been adversely and significantly affected. Further several witnesses have testified to the difficulty of selling their homes because of the proximity of Plaintiff's apartment building."
We conclude therefore that there is no merit in Plaintiff's exception of no cause or right of action.
2. Plaintiff contends the building permits reissued him on March 30, 1964 were improperly revoked on May 28, 1964, because there were no grounds for their revocation. There is no doubt that the above-enumerated violations of the Zoning Ordinance and Building Code provide ample grounds for revocation. However, Plaintiff contends that he spent a considerable amount of money in reliance on the following: *297 (a) the reissuance of the permits and (b) reliance on an agreement which the Defendants and the Intervenors admit that Mr. Ferdinand Lob, Assistant Parish Attorney, entered into with Plaintiff during the trial of the preliminary injunction, to the effect that Plaintiff's permit for the Hector Street property was valid and that Plaintiff could continue with work on the building. Mr. Lob admitted that when he entered into the agreement, he was unaware of the numerous violations of the Zoning Ordinance and the Building Code perpetrated by Plaintiff. At the trial of the permanent injunction the Parish changed its position, contending both permits should be revoked and that both structures should be removed.
The two key questions in this regard are: (a) Is the Parish estopped by its actions from enforcing the revocation of the permits and from requiring that the structures be removed? (b) Even if the Parish is estopped, are the Intervenors also estopped?
With regard to the reissuance of the permits, we do not believe the Parish is estopped from changing its position. In City of New Orleans v. Langenstein, 111 So.2d 363, this Court said:
"We know of no statutory law or other authority which gives to any city official or to any city board or department an arbitrary right to waive in favor of any land proprietor the city's right to enforce a compliance with the provisions of the Comprehensive Zoning Law." 111 So.2d at 369.
We must also note that after he resumed construction in May, 1964, Plaintiff received many warning letters from his neighbors; that, no novice to the field, he had been an apartment builder in Jefferson Parish for more than 25 years; and that, therefore, he must have been aware of the numerous zoning and building code regulations which he was violating. In this connection, we think the language of this Court in Comeaux v. Parish of Jefferson, 164 So.2d 123, is appropriate here, viz:
"Plaintiff had no color of right to a certificate of use and occupancy for the extension of his non-conforming use, since he did not comply with the requirement of the ordinance * * * Not having secured a lawful certificate in the first place, plaintiff should not have relied upon the certificate he obtained as, reasonably, he could not have believed it would protect him in constructing an addition to his building in violation of the zoning ordinance." 164 So.2d at 125.
With regard to the agreement entered into with the Assistant Parish Attorney, we held in State ex rel. Jacobson v. City of New Orleans, Department of Safety and Permits, La.App., 166 So.2d 520, that an agreement by a city attorney to try a case as though an amending ordinance had never been adopted could not suspend the effect the ordinance would otherwise have on plaintiff's property. Likewise, in this case, we do not believe that any agreement entered into with the Parish Attorney could cure the illegality of the permit, especially since the permit under which it was agreed Plaintiff could continue construction allowed for 1000 square feet less than the size of the building actually constructed.
However, assuming arguendo that the Parish would be estopped from revoking the permits and requiring the removal of the offending structures, the Intervenors would not be so estopped. This was squarely held in Wright v. De Fatta, La. App., 129 So.2d 614, which is to the effect that, even though a property owner acts in reliance on permits given him by city officials, this does not estop his neighboring property owners from demanding removal of structures which are in violation of the zoning ordinance. The Trial Judge in the instant case correctly cited and applied the De Fatta rule in the following manner:
"It is unfortunate that the evidence herein makes it necessary for the Court *298 to remove the buildings which plaintiff has constructed, but the law of this state is clear in this regard. See Wright v. De Fatta, 129 So.2d 614, at page 619:
"The defendant further contends that by all principles of equity he should not be compelled to move the houses in question at a great financial loss to him after having been authorized to take the action which he did by various city officials. In this connection, we are of the opinion that the record substantiates the claim of Mr. De Fatta that he acted in good faith throughout, and it is possible that the Municipal Board and the City Council were moved by such equities when rendering their decisions. However, the suit we have before us was not instituted by the city, but was brought by neighboring property owners within the city, and as such, they are not estopped by any permission or representations made by the municipal employees. On this question, the weight of authority throughout the United States including Louisiana, is that a defendant in such a case does not secure any such vested rights, regardless of the permission given by city employees, nor the expenditure of any money on his part in reliance thereon. In such cases, if the acts of the municipal employees were in violation of the municipal ordinances, the plaintiffs have the right as citizens of the municipality to have the ordinance enforced. City of New Orleans v. Langenstein, La.App., Orleans 1959, 111 So.2d 363, certiorari denied.'"
3. Finally, Plaintiff contends there is no provision in the Jefferson Parish Zoning Ordinance which authorizes the demolition or removal of his multiple family structures. He cites Section XXVI (3) of the Ordinance which provides that any person who violates any of its provisions "shall be guilty of a misdemeanor punishable either by fine of not less than Ten ($10.00) dollars or more than Twenty-Five ($25.00) dollars or not more than thirty (30) days jail sentence, or both, for each and every day such a violation continues; each continuous day of violation shall constitute a separate and distinct offense." However, the fact that a continuous public nuisance is also a violation of a criminal statute does not deprive a court of civil jurisdiction to prevent the injury or abate the nuisance. City of New Orleans v. Liberty Shop, 157 La. 26, 101 So. 798, 40 A.L.R. 1136; City of New Orleans v. Lafon, La.App., 61 So.2d 270.
Plaintiff also relies on Section XXVI (4) contending that it likewise contains no authorization for the destruction of buildings constructed in violation of the Zoning Ordinance. This provision reads as follows:
"In case any building or structure is or is proposed to be erected, structurally altered, or maintained, or any building, structure, or land is used in violation of any provision of this Ordinance, any proper officer of Jefferson Parish or their duly authorized representatives or any adjacent or neighboring property owner who would be especially damaged by such violation may, in addition to other remedies, institute injunctive or other appropriate action or proceedings to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance, or use or to correct or abate such violation, or to prevent the occupancy of such building structure or land or to prevent any illegal act, conduct, business, or use in and about such premises. Where a violation of this Ordinance exists the Safety Director may, in addition to other remedies, notify all public utilities and Parish service agencies that such violation exists and request that service be witheld therefrom until such time as the violation ceases to exist."
This statute specifically authorizes a proceeding to "abate" a violation. The *299 most common and accepted meaning of the word "abate" is to demolish or destroy. The first definition given in Black's Law Dictionary (4th edition) is "to throw down, to beat down, destroy, quash." The legal definition given in Webster's New International Dictionary (2d edition) is as follows:
"Law. a To bring entirely down or demolish, to put an end to; to do away with; as, to abate a nuisance; to abate an action."
The following definition is given in 1 C.J.S. at p. 19:
"ABATE. A generic term, derived from the French word `abattre,' and signifying, as a transitive verb, to bring entirely down or demolish, to do away with, to end or terminate, to make void, to nullify, to prostrate, beat down, or overthrow, to quash or destroy, to throw down or to put down * * *."
See also 1 Words and Phrases verbo "Abate," p. 169. In the instant case the violation consists of the multi-family dwellings themselves erected under permits improperly issued and in contravention of many zoning and building code provisions. Clearly the District Court had authority to order their "abatement" or demolition.
The judgment appealed from gives Plaintiff "a reasonable time" to demolish and remove his two apartment buildings. However, it would be preferable to set a definite time limit for this purpose. Therefore, the judgment is amended to require Plaintiff to demolish and remove the offending buildings within six months from the finality of this judgment. As thus amended, and in all other respects, the judgment is affirmed; Plaintiff to pay all costs in both courts.
Judgment amended and affirmed.