209 So.2d 176 (1968)
Granville ABBOTT et al.
v.
Doctor Harry CAPLAN and City of New Orleans.
No. 2990.
Court of Appeal of Louisiana, Fourth Circuit.
April 8, 1968.
George O'Dowd, New Orleans, for plaintiffs-appellants.
Meyer Sabludowsky, New Orleans, for Doctor Harry B. Caplan, defendant-appellee.
Alvin J. Liska and Posey R. Bowers, New Orleans, for City of New Orleans, defendant-appellee.
Before SAMUEL, CHASEZ and BARNETTE, JJ.
*177 BARNETTE, Judge.
The plaintiffs, as property owners, brought suit against the defendant, an owner of adjacent property, seeking to enjoin him from building an apartment building on his lot. The plaintiffs alleged that the building would be in violation of zoning regulations. The City of New Orleans was made a defendant to enjoin the issuance of a building permit or to recall and revoke one previously issued in alleged violation of the zoning ordinance. The rule for preliminary injunction was denied and the suit was dismissed. The plaintiffs have appealed.
The defendant Dr. Harry B. Caplan is the owner of Lots 1, A-1, and B-1, all in Square 1, 5th District of the City of New Orleans. Lot C-1, Square 1, is owned by a corporation of which Dr. Caplan is president, and is leased to Shell Oil Company. A gasoline service station is located thereon. Lots A-1 and B-1 are occupied by certain commercial buildings and the entire area, comprised of Lots A-1, B-1 and C-1, is known as "Caplan Shopping Center." There is a large paved area set aside for parking. The shopping center is zoned as E-Commercial and is located in the Algiers section of the City of New Orleans. The gross area of the buildings on Lots A-1 and B-1 is 25,724 square feet. The lot (described as Lot 1, Square 1, above) on which the 10-unit apartment house is located, fronts on Flanders Street and is adjacent and to the rear of the lots occupied by the shopping center which fronts on General Meyer Avenue. It is immediately behind the building occupied by a shopping center lessee, Rubenstein's.
By an authentic act dated September 29, 1959, and filed and registered in the Conveyance Office, October 14, 1959, a self-styled "servitude" of drives and parking lanes for the use and benefit of Lots A-1, B-1, and C-1 was established on these lots. Whether or not this so-called dedication created a conventional servitude, we will not consider at this point.
It was necessary for defendant Caplan to obtain a rezoning classification for Lot 1 in order to build the 10-unit apartment building thereon, and accordingly, the City Council of the City of New Orleans did, on February 15, 1962, enact an ordinance changing the zoning classification from B-Two Family District to E-Neighborhood District. Formal approval, promulgation and registration was effected March 16.
Defendant applied for a building permit and submitted therewith a plat plan. As a requirement for the issuance of the permit it was necessary to establish that provision had been made for off-street parking for 10 automobiles to serve the proposed apartment building. In an attempt to meet this requirement Dr. Caplan allocated 11 parking spaces within 300 feet of the apartment building. The parking spaces are located on the adjacent Lot A-1 alongside the building occupied by Rubenstein's Store and within 300 feet of the apartment building.
While defendant Caplan's application for building permit was pending, plaintiffs' attorney by letter of May 9, 1967, notified the Department of Safety and Permits as follows:
"They [plaintiffs, adjacent property owners] will not willingly permit any deviations from the letter of the law and this includes a request to use 10 or 11 parking spaces in the adjacent shopping area (now crowded) for the purpose of satisfying the parking requirements.
"Please let me know when plans are being submitted so that we might have an opportunity to inspect same and make any possible valid legal objection thereto."
The Chief Building Inspector wrote plaintiffs' attorney on May 22 to inform him that Dr. Caplan had met all requirements; that there were no zoning violations; and the permit had been issued. Upon receipt of that letter plaintiffs filed suit immediately.
*178 Plaintiffs contend that the building permit was issued illegally and that defendant Caplan was not in good faith and therefore is not entitled to equitable defense. The basis of the illegality is the alleged failure of defendant Caplan to meet the off-street parking requirement necessary for issuance of a valid permit.
Under provisions of the zoning ordinance, off-street parking is required for a multiple occupancy apartment building of the type in question and provision is made for the parking area to be provided on other off-street property when it cannot be provided on the same lot. It provides as follows:
"Where off-street automobile parking space or area cannot be reasonably provided on the same lot on which the principal use is conducted, required parking space or area may be provided on other off-street property if such space or area lies within three hundred (300) feet of the main building and the zoning classification of such land is the same as, or less restrictive than, the classification of the lot upon which the main use is located. Such parking space or area shall be established by a recorded covenant or agreement as parking space to be used in conjunction with the principal use and shall be reserved as such through an encumbrance on the title of the property to be designated as required parking space or area, such encumbrance to be valid for the total period the use or uses for which the parking is needed are in existence. Such agreement or covenant shall be duly recorded in the office of the Registrar of Conveyances and certificate furnished Director of Safety and Permits." (Emphasis added.) Article VI, Comprehensive Zoning Ordinance, City of New Orleans, No. 18565.
Plaintiffs contend defendant has not complied with the foregoing ordinance as the space on Lot A-1, adjacent to Rubenstein's Store, had already been "dedicated" for parking in the general area provided for that usage in connection with the Caplan Shopping Center. In fixing the requirements of off-street parking for various structures the ordinance provides:
"Stores and Shops for Services and Trades including Restaurants and Barrooms: Parking area equal to twice the ground floor area of such store or shop." Article VI, Comprehensive Zoning Ordinance, City of New Orleans, supra.
Plaintiffs contend the allocation of the 11 parking spaces for the apartment reduces the parking area for the stores and shops below the required minimum.
According to the testimony of Frank E. Robin, Chief Building Inspector for the City of New Orleans, the total area occupied by the store buildings is 25,724 square feet. This would require 51,448 square feet for parking area. The gross area is 81,770.69 square feet, and if the 1,100 square feet of the filling station building is subtracted, there is a net area of 80,670.69 square feet within the shopping center. Therefore after deducting the aggregate space of the buildings and the parking area required (77,172 square feet), there is left 3,498.69 square feet. Eleven parking spaces would require 1,760 square feet, leaving an excess of 1,738.69 square feet. On this basis of calculation he felt defendant had met the ordinance requirement.
Murvan M. Maxwell, the architect who drew the plans for the shopping center in 1959, indicated on the plat plan prepared at that time that the gross area of the proposed shopping center was 80,850 square feet: the total area of buildings, 26,824 square feet (which included the 1,100 square feet in the filling station building); off-street parking, 53,648 square feet, leaving an excess of 378 square feet (which would be only enough for about two additional parking spaces).
Chief Building Inspector Robin explained at trial that Maxwell's calculations were incorrect as the 1,100 square feet representing *179 the filling station building does not require a two for one allocation of space for off-street parking. Obviously, if this interpretation of the Comprehensive Building Code is correct, an adjustment in Maxwell's figures accordingly would then show an ample excess of space to more than accommodate the 11 additional spaces. However, neither Robin nor Maxwell deducted from the gross total the 10,000 square feet included in the filling station lease which is not part of the parking area.
We must agree that the ordinance requirement for off-street parking for stores and shops for services and trades including restaurants and barrooms by its very terms does not apply to gasoline filling stations. Furthermore the very nature of the business of filling stations is for off-street service to automobiles, therefore, the 1,100 square feet occupied by the filling station building would not require a two for one parking facility.
The plaintiffs now contend, and perhaps correctly so, that the entire area occupied by the filling station under lease to Shell Oil Company (an area encompassing 10,000 square feet of the shopping center), which was included in both the Robin and Maxwell calculations, should not be computed in determining the overall gross area available for parking for the shopping center. It does seem contrary to reason that the filling station area under lease to Shell should be used for general parking. Apparently no allowance has been made even for space required for normal service station operations. If this contention is valid, the original plan for the shopping center in 1959 was in violation of the ordinance since the gross area available for buildings and parking was only 70,850 square feet. However the question of the legality of the building permit issued in 1959 is not before us in this proceeding. The question for our decision on this appeal is the legality of the permit for the building of the 10-unit apartment, and any irregularities in the shopping center plan can have no bearing on the issue before us now.
The so-called act of dedication "creating servitudes of drives and parking lanes," dated September 29, 1959, referred to above, specifically provides that Dr. Harry B. Caplan, as owner of Lot A-1 created:
"* * * a servitude for parking along that portion of A-1 fronting on Flanders Street and immediately adjoining buildings [Rubenstein's Store] under construction in the Shopping Center and which measures 20 feet in width from the front line on Flanders Street to the line adjoining the proposed buildings, and which has an approximate area for 17 parking lanes, * * *."
It is from this space that the 11 parking spaces in question were later taken to accommodate the apartment building. In his letter of May 22, 1967, to plaintiffs' attorney Chief Building Inspector Robin said:
"Before the permit application was accepted, we required the owner, Dr. Harry B. Caplan, to record these spaces in the Registrar of Conveyance Office. The certificate of recordation is on file, and it can be seen in the Conveyance Office in Book 675, Folio 619. This certificate registers 11 spaces, 1 more than was required."
The only evidence we find in the record before us of this recordation is an exhibit which purports to be a photocopy of a letter from Dr. Caplan to the City of New Orleans, "Building Permit Department," dated April 27, 1967. The substance of the letter informs the Permit Department that he is the owner of the apartment in the process of building and is also the owner of Caplan Shopping Center, and recites as follows:
"The undersigned makes available, accessible and dedicates eleven parking spaces to be used for the life of the ten unit apartment building to be erected on *180 Lot 1, Square 1 as set forth hereinabove, bearing municipal no. 1400 Flanders Street, this City. Said eleven parking spaces will be located on the adjacent property in the Caplan Shopping Center, known as Rubenstein Bros. Store, which faces Flanders Street and is located and situated at 3500 General Meyer. Said parking spaces are to be provided herein as required for off-street parking requirement of the proposed apartment building."
The only indication in the record that it is filed in the Conveyance Office, as stated by Inspector Robin, is an uncertified, and apparently unauthentic notation on the back: "REGISTERED IN C. O. B. 675, Fol. 619 4/27/67."
Additionally, defendants allege in their briefs filed with this court that the self-styled agreement by defendant Caplan was later formally reduced to an authentic act and was registered in the conveyance records of this parish. The record before us is devoid of any such authentic act, and thus we can take no notice as to its existence or efficacy.
We entertain no doubt that the letter as quoted above was filed for record as indicated, even so, it falls far short of compliance with Article VI of the Comprehensive Zoning Ordinance. It is merely a self-serving private communication. It is not an "agreement or covenant." It does not reserve the space as an encumbrance on the title of the property. Such encumbrance under the provisions of the ordinance when created shall "be valid for the total period of the use or uses for which the parking is needed are in existence." If the 1959 reservation or dedication of the parking area for the shopping center, which created an encumbrance on the property described by authentic act duly recorded, can be amended or revoked in part by this simple self-serving private communication, all the more so could this so-called dedication be abrogated in whole or in part to serve the future need of the property owner. For this reason there is no assurance that it would continue as an "encumbrance" (if it is one) "for the total period of the use or uses for which the parking is needed are in existence."
Furthermore there is nothing in the record which clearly designates the 11 parking spaces allocated to the apartment building. There is no evidence that they have been segregated or rendered available to the exclusive use of the tenants of the apartments. There is no assurance that they will not continue to be used indiscrimately by the patrons of the shopping center, forcing the apartment tenants to park on the street or seek other off-street parking space, thus rendering their allocation to the apartment building more fictional than real.
We have serious doubt, for a number of reasons, that the original dedication constitutes a conventional servitude, notwithstanding its language to that effect, but it does create an encumbrance on the title to the property. The defendant is not at liberty to build on it, sell, or lease it to the prejudice of the shopping center. Assuming that it might, by proper act duly recorded, be altered by agreement of all the parties concerned, there is no evidence that such was ever done.
There can be no doubt that the act of "dedication" was intended by the owners of the property to create parking rights and rights of ingress and egress in favor of their tenants for their use and convenience and that of their patrons. This is a very material consideration bearing upon the lease of the property. Furthermore it was executed to meet the requirements of the City of New Orleans under its building regulations. These obligations cannot be brushed aside merely by the writing of a self-serving letter. There are, however, filed in evidence by stipulation, letters from The Great Atlantic & Pacific Tea Company, Inc., and T. G. & Y. Stores Company to Dr. Caplan and an agreement between Franklin Stores Corporation (referred *181 to in the stipulation as "Rubenstein's") and Dr. Caplan, the substance of each of which is that for the consideration of the filling in of a ditch along the General Meyer Avenue side of the shopping center according to certain specifications, the lessees agreed as follows:
1. A & P: "We are also agreeable for you to show the parking alongside the Rubenstein building on Flanders Street on your plan to be presented to the City Officials in securing approval to construct the apartment building on the lot in the rear of our store."
2. T. G. & Y.: "T. G. & Y. Stores Co. agrees to allow tenants of Lessor's apartments to use ten of the twenty-two parking spaces on the Flanders Street side."
3. Franklin Stores (Rubenstein's): "* * * agrees to permit and authorize the use of said parking area on the side of the store by tenants of a proposed apartment building to be constructed by Dr. Harry B. Caplan, which apartment building will be situated adjacent to said store of Franklin Stores Corporation."
If the encumbrance created in favor of the shopping center tenants to comply with the zoning ordinance can be removed by legal or conventional act, such act must be of equal dignity with that which created it.
The T. G. & Y. letter and the Franklin Stores Corporation agreement do make some reference to the increase of the parking area by closing the ditch and improvement of access. The A & P letter makes no such reference. The witness Maxwell, who drew the plans for storm drainage culverts in the ditch closing project, estimated the addition of 20 parking spaces, but he also said that he thought the ditch was a part of the dedicated street. This indicates some doubt that it would add to off-street parking.
It is our opinion that the mere writing of the above-mentioned self-serving letter to the "Building Permit Department" did not meet the requirement of the Comprehensive Zoning Ordinance to encumber the title to the property and to establish the off-street parking spaces necessary for the apartment building, and the issuance of a building permit based thereon was not in compliance with the Comprehensive Zoning Ordinance, Article VI, supra.
At the time of the trial below, the apartment building construction was said to be about two-thirds complete. Photographs filed in evidence substantiate this. Its cost was stated to be approximately $87,000. We may assume it has been completed by now. The defendants Dr. Caplan and the City of New Orleans through its proper representatives, had timely notice in writing that plaintiffs would insist upon strict compliance with the zoning ordinance. Furthermore, the plaintiffs filed this suit immediately upon notification that the permit had been issued. Notwithstanding this notice, construction was begun and continued with knowledge of the possible consequences. Defendants have no right to complain if their acts under these circumstances result in onerous consequences. Boyd v. Donelon, 193 So.2d 291 (La.App. 4th Cir. 1966); Comeaux v. Parish of Jefferson, 164 So.2d 123 (La.App. 4th Cir. 1964).
For the reasons stated above, the construction did not meet the requirements of the law. To grant the injunctive relief prayed for by plaintiffs would create a burden which should not, in the interest of justice, be imposed, if within reasonable time the required conditions can be met to validate that which has been done illegally. Accordingly, we will exercise the discretionary authority conferred upon us by LSA-C.C.P. art. 2164 and render the only judgment which in our opinion is the just, legal and proper one upon the record presently before us on this appeal.
*182 The judgment appealed from which denies the petition for rule for preliminary injunction and dismisses plaintiffs' petition is annulled and set aside and plaintiffs' petition is reinstated. The case is remanded for further proceedings with instructions that defendants be granted a reasonable time within which to comply with the provisions of the Comprehensive Zoning Ordinance of the City of New Orleans consistent with the opinion and views herein expressed. Upon failure to do so within a reasonable time the injunctive relief sought by plaintiffs shall be granted consistent with their pleadings and according to law.
Costs of this appeal shall be paid by defendants-appellees; all other costs to await final adjudication.
Judgment annulled and set aside; case remanded with instructions.